United States Bankruptcy Court
For the Eastern District of North Carolina
Fayetteville Division

In Re:                                             Case Number: 17-01177-5-JNC
    Kenneth Ray Hardin
    1936 Russ Road
    Lumberton, NC 28358                            Chapter 13
           Debtor(s)

Motion for Relief from Automatic Stay

Now comes Cape Fear Farm Credit, ACA, as movant, and moves the court to grant relief from the automatic stay and any other stay imposed by the United States Bankruptcy Code, and movant respectfully shows the court in support thereof:

1.      Movant is a federally chartered cooperative lending agency having an office in Fayetteville, North Carolina.

2.      Kenneth Ray Hardin is the debtor in the above-captioned chapter 13 proceeding and resides at 1936 Russ Road, Lumberton, North Carolina 28358.

3.      Joseph A. Bledsoe III is the trustee for debtor and regularly conducts his profession at PO Box 1618, New Bern, North Carolina 28563.

4.      Shereda G. Hardin a/k/a Shereda Locklear Hardin is a natural person residing at 1936 Russ Road, Lumberton, North Carolina 28358.

5.      Cory Kendrick Hardin is a natural person residing at 2663 McDuffie Crossing Road, Lumberton, North Carolina 28360.

6.      Debtor and Shereda G. Hardin a/k/a Shereda Locklear Hardin are indebted to movant on a promissory note dated April 15, 2016, a copy of which promissory note is attached hereto as exhibit A.

7.      This promissory note represents commercial indebtedness, not consumer indebtedness of debtor and Shereda G. Hardin a/k/a Shereda Locklear Hardin because the indebtedness was not incurred primarily for a personal, family, or household purpose.

8.      This promissory note is secured by a perfected security interest in the real property owned by debtor, Shereda G. Hardin a/k/a Shereda Locklear Hardin, and Cory Kendrick Hardin described in the deed of trust executed by debtor, Shereda G. Hardin a/k/a Shereda Locklear

1

Hardin, and Cory Kendrick Hardin and recorded in book 2035, page 841 of the Robeson County registry. A copy of said deed of trust is attached hereto as exhibit B.

9.      This note is also secured by a perfected security interest in the goods, inventory, equipment, accounts, farm products, and crops and other collateral owned by debtor and Shereda G. Hardin a/k/a Shereda Locklear Hardin described in the security agreements attached hereto as exhibits C and D, the UCC financing statements attached hereto as exhibits E and F, and the certificate of title attached hereto as exhibit G including, without limitation, the 2003 Harley Davidson motorcycle vehicle identification number 1HD1BJY193Y013836.

10.     Movant is the present owner and holder of said promissory note, deed of trust and security agreement.

11.     Under the terms of debtor's proposed plan of reorganization debtor proposes to pay said indebtedness by paying the indebtedness according to its terms directly to movant "outside the plan."

12.     Debtor and Shereda G. Hardin a/k/a Shereda Locklear Hardin are in default in making the payments due under terms of said promissory note. The note is now past due for the December 1, 2017 post-petition annual $19,475.43 payment plus $2,206.32 in late charges for this late payment and prior late payments for a total of $21,681.75.

13.     Debtor and Shereda G. Hardin a/k/a Shereda Locklear Hardin have made no payments to movant subsequent to the commencement of this bankruptcy case on March 10, 2017.

14.     The payoff on said promissory note through February 28, 2018 is $32,194.73 together with interest from that date as provided in said promissory note plus late charges and reasonable attorney fees and costs and other fees.

15.     But for the automatic stay herein, movant would be entitled to foreclose said deed of trust under the power of sale contained therein or otherwise and to take possession of and dispose of, pursuant to the security agreement, the collateral described in the security agreement, UCC financing statements, and certificate of title.

16.     Cause, including lack of adequate protection for movant's interest in the collateral, exists for terminating the automatic stay.

17.    This motion is brought as a contested matter pursuant to Bankruptcy Rule 9014 for the purpose of obtaining relief from the stay imposed by §362 and any other provision of the United States Bankruptcy Code.

Wherefore movant moves the court:

1.    To grant relief from the automatic stay and any other stay herein to permit movant to pursue in law or in equity movant's claim against debtor, Shereda G. Hardin a/k/a Shereda Locklear Hardin, and Cory Kendrick Hardin including foreclosure of the aforesaid deed of trust under the power of sale contained therein or otherwise and to take possession and dispose of the collateral described in the security agreements, UCC financing statements, and certificate of title.

2.    To determine that there is no §1301 co-debtor stay with respect to this indebtedness, and, in the alternative, to modify any such stay.

3.    In the alternative, to order debtor to afford adequate protection to movant.

4.    To waive the provisions of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure so that the order will be in full force and effect immediately upon entry by the court.

5.    That the court award movant such other and further relief as the court deems just and proper.

This the 2nd day of March, 2018.


Fields & Cooper, PLLC                          s/John S. Williford, Jr.
Attorneys at Law                               John S. Williford, Jr.
P. O. Box 4538                                 NC Bar No. 7395
Rocky Mount, NC 27803                          Attorney for movant
Telephone: (252) 442-3115                      P.O. Box 4538
                                               Rocky Mount, NC 27803

North Carolina, _Cumberland_ County

Nancy Byrd, being duly sworn, deposes and says she is a duly authorized representative of movant, she has read the foregoing motion, and the same is true of her own knowledge except as to matters therein stated upon information and belief which matters she believes to be true.

_____
Nancy Byrd

Sworn to and subscribed before me

this _28th_ day of February, 2018.

_____
Notary Public

My commission expires: _8-30-20_

(notary public seal)

4

United States Bankruptcy Court
For the Eastern District of North Carolina
Fayetteville Division

In Re:                                                    Case Number: 17-01177-5-JNC

    Kenneth Ray Hardin
    1936 Russ Road
    Lumberton, NC 28358                          Chapter 13
             Debtor(s)

Notice of Motion
and
Certificate of Service

TO:  The debtor(s), attorney for the debtor(s), trustee and other parties in interest

    Notice is hereby given of the motion to obtain relief from automatic stay and other relief filed simultaneously by Cape Fear Card Credit, ACA in the above-captioned case; and

    Further notice is hereby given that if you fail to respond or otherwise plead or request a hearing in writing within 14 days from the date of this notice, the relief requested in the motion may be granted without further hearing or notice; and

    Further notice is hereby given that if a response and a request for a hearing is filed by the debtor(s), trustee, or other parties in interest named herein in writing within the time indicated, a hearing will be conducted on the motion and response thereto at a date, time and place to be later set by this court and all interested parties will be notified accordingly.

    Date of notice:  March 2, 2018

                                      s/John S. Williford, Jr.

Fields & Cooper, PLLC                      John S. Williford, Jr.
Attorneys at Law                          NC Bar No. 7395
PO Box 4538                               Attorney for movant
Rocky Mount, NC 27803                     PO Box 4538
Telephone: (252) 442-3115                 Rocky Mount, NC 27803

Certificate of Service

I, John S. Williford, Jr. of P. O. Box 4538, Rocky Mount, North Carolina 27803-0538 certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age:

That on March 2, 2018, I served copies of the foregoing motion and notice of motion on

> Kenneth Ray Hardin
> 1936 Russ Road
> Lumberton, NC 28358
>
> Chad W. Hammonds, Esq.
> PO Box 7
> Maxton, NC 28364
>
> Joseph A. Bledsoe, III
> Chapter 13 Trustee
> PO Box 1618
> New Bern, NC 28563
>
> Marjorie K. Lynch, Esq.
>  Bankruptcy Administrator
> 434 Fayetteville Street Mall, Suite 620
> Raleigh, NC 27601
>
> Shereda G. Hardin a/ka Shereda Locklear Hardin
> 1936 Russ Road
> Lumberton, NC 28358
>
> Cory Kendrick Hardin
> 2663 McDuffie Crossing Road
> Lumberton, NC 28360

by mailing copies first class mail postage prepaid to the debtor at debtor's dwelling house or usual place of abode, being the address shown in the petition, to debtor's attorney at said attorney's post office address, to the trustee at the place where the trustee regularly conducts his business or profession, and to the bankruptcy administrator at the place where she regularly conducts her business or profession, to Shereda G. Hardin a/ka Shereda Locklear Hardin at such person's dwelling house or usual place of abode and to Cory Kendrick Hardin at such person's dwelling house or usual place of abode

I certify under penalty of perjury that the foregoing is true and correct.

Executed on March 2, 2018                           s/John S. Williford, Jr.
                                                    John S. Williford, Jr.

# FIXED RATE NOTE

Date of Note: April 15, 2016

Loan Number:

Place Executed: Fayetteville          , NC

Amount: $ 68,600.00

## REPAYMENT SCHEDULE

| NUMBER | TYPE | | AMOUNT | DESCRIPTION OF DUE DATE | |
|--------|------|--|--------|-------------------------|--|
| 3 | Fixed Payment | **Installment(s) of $ | 19,475.43 | due | Annually beginning | 12/01/2016 |
| | | **Installment(s) of $ | | due | | |
| | | **Installment(s) of $ | | due | | |
| | | **Installment(s) of $ | | due | | |

A final installment of the unpaid principal balance of the Indebtedness and all accrued interest is due December 01, 2019 . All installments are successive unless otherwise noted and are payable on the same day of the month as the initial installment. Installment payments will be applied to amounts due in such manner as Association may determine in its sole discretion, except as otherwise noted herein.

**Fixed Payment means the installment amount amortizes both principal and interest. Fixed Principal means the installment amount amortizes principal only and accrued interest is due with each installment. Principal Only means the installment amount includes principal only and interest installments are separate. Interest Only means the installment amount includes accrued interest only and principal installments are separate.

For value received, the undersigned (whether one or more) promise(s) to pay, in lawful money of the United States of America, in accordance with the repayment schedule(s) above stated, to the order of Cape Fear Farm Credit, ACA (together with any holder hereof, "Association"), at its office in Fayetteville, NC, or any other such place as designated by Association in writing, the principal sum of Sixty Eight Thousand Six Hundred and 00/100 Dollars ($68,600.00), with interest until paid at a rate of Six and 25000/100000 percent (6.25%) per annum.

The undersigned and every endorser and assumer of this note hereby expressly waive presentment, demand, protest and notice of dishonor, and consent to all renewals, reliances, extensions, modifications, reamortizations or any other rearrangements of the Indebtedness evidenced by this note, and release of personal liability and of security.

If payment of principal and/or interest (or portions thereof) is not paid when due or if the undersigned fails to perform or observe any of its other obligations under this note, the loan agreement, or any other agreement, instrument or other document evidencing, securing or otherwise relating to the loan indebtedness evidenced by this note, or any part thereof, this note shall be in default.

At the option of Association, any default under the terms and conditions of this note or under any other written instrument executed by the undersigned and owned, held or serviced by Association shall constitute a default under this note and any one or more of such notes or other written instruments. Upon default, Association, at its option, and without notice to the undersigned, may declare this note and all other indebtedness owed by the undersigned to be immediately due and payable; may cease to make any further advances under this note; may foreclose upon or sell any or all of the security for this note, in such order as it may prefer; may proceed with collections; may apply the proceeds to any indebtedness secured thereby in any order which it may desire; and may exercise from time to time all rights and remedies available under the Uniform Commercial Code and other applicable law, and under any other instrument relative to such indebtedness or security. Unless prohibited by law, any applicable prepayment premium shall be due and payable upon such acceleration.

If Association employs attorney(s) to collect the indebtedness evidenced by this note, or to enforce or preserve any rights provided for herein or relating to any security for this note, or suit is filed hereon, or proceedings are had in bankruptcy or any other court whatsoever with respect thereto, then, in addition to any principal, interest or other charges provided for herein, Association shall also recover all costs and expenses, including attorneys' fees and legal expenses reasonably incurred in connection therewith, including such costs and fees incurred on appeal. Such amounts shall become part of the Indebtedness evidenced hereby and shall be immediately payable on demand, and shall, to the extent permitted by law, bear interest from the date incurred until paid at the rate provided herein.

If there is any error or omission in this note or in any instrument securing it, the undersigned will promptly, upon request of Association, execute a new note or other documents as deemed necessary by Association to correct such error or omission and will promptly pay upon demand of Association all attorneys' fees, costs and expenses incurred in connection therewith. If the undersigned fails to pay, upon demand of Association, any sums due or incurred by Association for any of the purposes stated in this note, Association may advance the same, and all amounts so advanced shall become principal immediately due and payable hereunder.

The undersigned agrees to provide current financial statements, including a balance sheet and income statement in a form acceptable to the Association as may be from time to time requested by Association while the indebtedness evidenced hereby or any other indebtedness from the undersigned is outstanding.

The undersigned may at any time make prepayments of principal in any amount, provided all accrued interest and all other expenses and charges have been paid current. Prepayments applied to installments will be in inverse order of maturity, except as otherwise provided in writing by Association.

If any installment of principal and/or interest (or portions thereof) is not paid when due and remains unpaid at the end of twenty-nine (29) calendar days, a late charge equal to the sum of Four and 00/100 percent (4.00%) of the overdue installment shall be paid by undersigned to Association, not to exceed a maximum of $1000.00 .

This note is secured by real estate security instrument(s) dated: April 15, 2016.



*Exhibit A*

Date of Note: April 15, 2016
Loan Number:
Amount: $ 88,600.00

AT THE OPTION OF ASSOCIATION, ANY DEFAULT UNDER THE TERMS AND CONDITIONS OF ANY OTHER WRITTEN INSTRUMENT
EXECUTED BY UNDERSIGNED AND OWNED, HELD OR SERVICED BY Cape Fear Farm Credit, ACA FOR ITSELF AND/OR AS
AGENT/NOMINEE FOR ANY PARTY PURSUANT TO A MASTER AGREEMENT AMONG IT AND ITS WHOLLY-OWNED SUBSIDIARIES SHALL
CONSTITUTE A DEFAULT UNDER THIS DOCUMENT.

This note is the joint and several obligation of all persons executing it.  Given under the hand and seal of the undersigned.

_____ (L.S.)
Kenneth R Hardin, a/k/a Kenneth Roy Hardin

_____ (L.S.)
Shereda G Hardin, a/k/a Shereda Locklear Hardin

_____ (L.S.)

_____ (L.S.)

_____ (L.S.)

_____ (L.S.)

_____ (L.S.)

_____ (L.S.)

_____ (L.S.)

_____ (L.S.)

_____ (L.S.)

_____ (L.S.)

_____ (L.S.)

_____ (L.S.)

_____ (L.S.)

_____ (L.S.)

ATTACHED TO AND MADE A PART OF THAT NOTE DATED
April 15, 2016  BEARING ACA LOAN NO.

SECURITY INSTRUMENT RECORDED AT:

| DATED | BOOK | PAGE | COUNTY | STATE |
|-------|------|------|--------|-------|
| 04/15/16 | 2035 | 841 | Robeson | NC |

## CONSENT

The undersigned (whether one or more), having an interest in the real property described in the security instrument above referenced, hereby consents to the making of an advance in the amount of $68,600.00 and acknowledges that such is secured by the security instrument.

Given under the hand and seal of the undersigned this  15th day of April, 2016.

Signed, Sealed, and Delivered
In the presence of:

_____          _____
Witness                              Cory Kendrick Hardin

EG-Note

06/06/2013

Book 2035 Page 841

2016002975
ROBESON CO, NC FEE $58.00
PRESENTED & RECORDED:
04-16-2016 03:59:16 PM
VICKI L LOCKLEAR
REGISTER OF DEEDS
BY: JENNIE W GRIMSLEY
DEPUTY

BK: D 2035
PG: 841-849

DEED OF TRUST

This instrument prepared by and return to:    *Eric West, Attorney*
Cape Fear Farm Credit, ACA
Nancy S Byrd
P.O. Box 2405
Fayetteville              NC  , 28302-2405
Loan Number:

STATE OF NORTH CAROLINA
COUNTY OF Robeson

THIS INDENTURE, made April 15, 2016    between Kenneth R Hardin, aka Kenneth Ray Hardin, Shareda G Hardin, Shareda Locklear Hardin, and Cory Kendrick Hardin

_____ (hereinafter called Undersigned, whether Borrower or or others and whether one or more, and whether collectively or singularly);

Brian J. Smith, Trustee (hereinafter called Trustee), and Cape Fear Farm Credit, ACA    a corporation organized and existing under the laws of the United States of America, (hereinafter called Lender); and

WITNESSETH, that in consideration of a loan or advances made by Lender to Kenneth R Hardin, aka Kenneth Ray Hardin and Shareda G Hardin, aka Shareda Locklear Hardin

_____ (hereinafter called Borrower, whether one or more), and the sum of One Dollar ($1.00) paid to Undersigned at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, and for the purpose of securing the payment of the loan to Borrower by Lender, Undersigned hereby grants, bargains, sells and conveys unto the Trustee, as herein named, its successors and assigns, the following described land:

(SET FORTH HEREINBELOW AND/OR ON SCHEDULE "A" ATTACHED HERETO AND MADE A PART HEREOF)

see attached

_____

TO HAVE AND TO HOLD the said land with all and singular the rights, members and appurtenances thereunto belonging or anywise appertaining, to the only proper use and benefit of the Trustee, as herein named, his/her successors and assigns, forever, in fee simple. Undersigned acknowledges that Lender would be unwilling to extend or continue to extend the loans or advances secured hereby without the pledge provided hereby.

G01008NC (0206)                    Page 1 of 8

## Exhibit B

This conveyance is to be construed as a deed of trust, and not as a mortgage, and is made to secure (1) the performance of the covenants herein contained; (2) the payment of all Present Obligations (as defined below) extended by Lender to

Kenneth R Hardin, aka Kenneth Ray Hardin and Shereda G Hardin, aka Shereda Locklear Hardin

(hereinafter called Borrower, whether one or more), in the principal sum of Sixty Eight Thousand Six Hundred Dollars And No Cents ............................................................ Dollars ($ 68,600.00       ) as evidenced by the notes described below:

| 1 Original Principal (Face Amount) | 2 Amount of Present Obligations Secured (Principal Outstanding) | 3 Total Amount Committed to be Advanced (Includes Column 2) | 4 Date of Note | 5 When Due |
|---|---|---|---|---|
| 68,600.00 | 68,600.00 | 68,600.00 | 04/15/2016 | 12/01/2019 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

same being made a part hereof to the same extent as if each were set forth herein, and all renewals, reamortizations, extensions, refinances, modifications or other rearrangements thereof, together with interest thereon as provided therein; (3) all additional loans and future advances that may subsequently be made to Borrower (or to any one or more of the parties designated as Undersigned or Borrower) by Lender, which may be evidenced by a note or notes, and all renewals, reamortizations, extensions, refinances, modifications or other rearrangements thereof, plus interest thereon, and when any payment is made on any indebtedness secured hereby, as described herein, fresh advances may be made, from time to time, so as to make this contract continuous in nature; such advances, if any, to be made solely at the option of the Lender; and (4) all other indebtedness of Borrower to Lender, now due or to become due (whether directly or indirectly) or hereafter to be contracted, and all renewals, reamortizations, extensions, refinances, modifications or other rearrangements thereof, plus interest thereon, attorneys' fees, court or foreclosure costs, including Trustee's commissions, and any advances and interest thereon, which advances are made for the protection of the security or title thereto, such as, but not limited to, advances for taxes and insurance premiums, all of which are secured by this deed of trust. For purposes hereof "Present Obligations" of Borrower shall mean the principal amounts currently outstanding, which may include amounts committed to be advanced, under the note(s) listed hereinabove.

It is further understood and agreed by all parties hereto that the execution by Borrower and the acceptance by Lender of any notes, renewal notes or other instruments, or the agreement by Lender to any reamortizations, extensions, renewals, refinances, modifications, or other rearrangements shall not be construed as payment of any indebtedness hereby secured (whether or not, among other changes in terms, the interest rate or rates remain the same and/or time for payment is thereby extended or lessened), and shall not discharge the lien of this deed of trust which is to remain in full force and effect until the total indebtedness secured hereby has been paid in full. All notes or other instruments contemplated in this paragraph shall remain uncancelled and in the possession of Lender, its successors and assigns until the total indebtedness hereby secured is paid in full.

Provided, however, the lien of this deed of trust shall not be terminated or otherwise affected during the period of this instrument from the date hereof by repayment in full, one or more times, of all indebtedness then outstanding, unless this instrument shall be formally released or discharged of record. If at any time during the period of said instrument from the date hereof, there be no indebtedness outstanding of Borrower to Lender, and no obligation of Lender to make any further advances to Borrower, Lender will, upon the written request of Borrower or Undersigned, execute and deliver to Undersigned a reconveyance or satisfaction of this instrument.

For the consideration aforesaid, Borrower covenants as follows:

1) The making of any advance or the acceptance of any obligation shall be at the sole option and discretion of the Lender and upon such terms and conditions as it shall determine;

2) THE MAXIMUM UNPAID PRINCIPAL AMOUNT, INCLUDING PRESENT AND FUTURE ADVANCES AND OBLIGATIONS, WHICH MAY BE SECURED BY THIS DEED OF TRUST AT ANY ONE TIME SHALL NOT EXCEED One Hundred Twenty Five Thousand and 00/100 DOLLARS ($ 125,000.00          );

3) All future optional advances or obligations must be made within thirty years from date of this deed of trust irrespective of the duration of this deed of trust and/or the duration of any indebtedness secured hereby;

4) Lender expressly reserves, and Undersigned expressly consents to, the right to allocate and apply any payment received hereunder against the evidences of indebtedness secured hereby in such order, proportions and amounts as it, in its sole discretion, determines to be proper;

5) Lender may, at its option, determine and declare any or all present and future advances or obligations secured by this deed of trust to be in default and immediately due and payable upon the default in payment of one or more of the obligations secured hereby; or the default of any other term or condition of this deed of trust;

6) "Future advances" or "obligations" as used in this paragraph are defined as further and additional principal sums loaned, and interest thereon, to one or more of the Borrowers and which are secured by this deed of trust, including, without limitation, payments made by Lender for fire and extended coverage insurance, flood insurance, taxes, environmental issues, assessments or other necessary expenditures for the preservation or maintenance of the land or the title thereto, which shall be secured hereby and shall have the same priority as if such payments were made by Lender on the date hereof. Provided, however, no advances made by Lender for the preservation or maintenance of the land or the title thereof, nor any accrued interest on such advances, shall be considered in computing the maximum principal amount which may be secured hereby;

7) The total indebtedness secured by this deed of trust may be evidenced by various notes and/or other written instruments and evidences of indebtedness; and one or more or all such notes and/or the written instruments and evidences of indebtedness may, from time to time, be combined and merged into a single note or other evidence of indebtedness. Such combination and merger shall not constitute nor be construed as a payment, satisfaction or discharge of any prior advance made or prior obligation incurred.

This deed of trust also secures all other advances made to and obligations accepted from Borrower, under the terms of said note(s) and any subsequent note(s) or evidence of indebtedness secured hereby, and all amounts included in reamortizations, renewals, extensions, refinances, modifications, deferments and other rearrangements of any such indebtedness hereby secured. Whether or not the indebtedness secured hereby ever exceeds the maximum above stated, Lender shall have the sole discretion to determine the priority or order in which the various debts covered hereby shall be secured hereunder within said maximum.

For consideration as aforesaid, Borrower/Undersigned covenants as follows:

1. Undersigned is lawfully seized of said land in fee simple and has a perfect right to convey same. The said land is unencumbered and free from all claims and charges. Undersigned, for himself, his heirs, executors, administrators, successors, and assigns, warrants and will forever defend the right and title of said land unto the Trustee, his successors and assigns, against the claims of all persons whomsoever. In the event of default, if the Lender employs counsel to collect the debt evidenced by any note secured hereby, or to enforce or protect any rights provided for herein, in any court or before any administrative body whatsoever, then in addition to any principal, interest, and other charges as provided for in any note secured hereby, Lender shall also recover all costs and expenses reasonably incurred by Lender, including reasonable attorneys' fees, which costs, expenses and attorneys' fees shall become part of the indebtedness secured hereunder, shall be immediately payable, and shall draw interest from the date Lender retains counsel until paid at the highest rate provided in any note of notes secured hereby.

2. Whether or not Borrower is in default, in the event the Lender becomes a party to any legal proceeding involving the security described herein, other than an action to collect any indebtedness evidenced by any note or notes secured hereby, and including any bankruptcy case involving Borrower or Undersigned, then Lender may also recover all costs and expenses reasonably incurred by Lender, including reasonable attorneys' fees, which costs, expenses and attorneys' fees when incurred by Lender shall become part of the indebtedness secured hereby and shall be immediately payable on demand, and shall draw interest from the date incurred until paid at the highest rate provided for in any note secured hereby;

3. Undersigned will insure, and keep insured, as required by Lender from time to time, all buildings now and hereafter on said land against such risks, in such form, in at least such amounts, and with such company or companies, as shall be satisfactory to Lender, the loss, if any, to be payable to Lender as its interest may appear, and will deliver to Lender a policy or policies of insurance with mortgagee clause satisfactory to Lender attached thereto, and will promptly pay, when due, all premiums for such insurance. In addition to other insurance coverages, if the property is located in a government mandated flood area where participation in a Federal Flood Insurance Program is required, Undersigned agrees that upon receipt of notification from Lender and within the time period established by Lender, Undersigned will obtain and maintain flood insurance in such amount as Lender requires on all buildings, improvements, fixtures and any mobile home(s), now existing or hereafter erected, placed or maintained on or in the land described in this deed of trust, together with all other personal property securing Undersigned's obligations to Lender and maintained on or in such buildings, improvements or mobile home(s), until the loans, future advances and all other indebtedness secured by such property and this deed of trust is fully paid. Lender may require Undersigned to obtain or maintain such flood insurance at the time loan(s) secured hereby are made or at any time thereafter until the loans secured by such property are fully paid. Undersigned further agrees to pay Lender all reasonable fees and costs Lender incurs in determining whether any of the property is located in

an area having special flood hazards including determination fees (of initial and subsequent determination as well as fees for monitoring the flood hazard status of the property during the life of the loan), together with the cost of premiums and fees incurred with purchasing flood insurance for Undersigned, if Undersigned fails to do so within the time period required by Lender. Any such fees, premiums or costs shall, in Lender's sole discretion, be due and payable on demand or as otherwise provided for in the promissory note(s) secured hereby or this deed of trust. At the option of Lender, insurance funds may be used for reconstruction or repair of the destroyed or damaged insured buildings and insurance funds not so used shall be applied on such part of the indebtedness secured hereby as Lender, in its sole discretion, may determine.

4.    Undersigned will pay, when due and payable, all taxes, assessments and other charges that may be levied or assessed against said land, and all other amounts that may be or become a lien thereon. In the event Undersigned fails to pay, when due and payable, any such tax, assessment, charge or any other item which may or has become a lien on said land, Lender may, at its discretion, pay the same without notice to or consent from Undersigned but Lender shall be under no obligation to do so and the same will, at the option of Lender, be due and payable on demand of Lender or shall be deemed indebtedness secured hereby. Further, if required as a condition of any loan secured hereunder, Undersigned shall pay to Lender on the day installments are due, until the note is paid in full or any escrow requirement is otherwise waived in writing by Lender, a sum to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this instrument as a lien or encumbrance on the property; and (b) premiums for any and all insurance required by Lender. Such amounts required hereunder shall be determined in accordance with the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500) ("RESPA"). Upon payment in full of all sums secured by this instrument, or if any such escrow requirement is no longer required as a condition of any loan secured hereunder, Lender shall promptly refund to Undersigned any funds held by Lender under this escrow requirement.

5.    Undersigned will keep in good order and condition, preserve, repair, rebuild and restore all terraces, buildings, groves, orchards, fences, fixtures, shrubbery and other improvements, of every kind and nature, now on said land and hereafter erected or placed thereon, and will not permit the change, injury or removal thereof, will not commit or permit waste on said land, and will not, except with the written consent of Lender, cut, use or remove, or permit the cutting, use or removal of, any timber or trees on said land for sawmill, turpentine or other uses or purposes, except for firewood and other ordinary farm purposes.

6.    Undersigned covenants that he will not perform any act which might impair or tend to impair the continuation on the land herein described of all crop allotments and acreage allotments now established or hereafter established on any of the land herein described and hereby grants a lien on said allotments to Lender.

7.    Undersigned covenants, warrants and represents that there are no oral or written leases affecting the within described land at the date of this instrument other than those set forth in written application for this loan or in any written amendment thereto and that Undersigned will not enter into any leases affecting the within described land or improvements thereon without the prior approval of Lender thereof.

8.    That Undersigned hereby represents and warrants to Lender that there are no materials (hereinafter collectively called "Special Materials") presently located on or near the premises which, under Federal, state, or local law, statute, ordinance, regulation or standard or administrative or court order or decree or private agreement (hereinafter collectively called "Environmental Requirements", requiring special handling in use, generation, collection, storage, treatment or disposal, or payment of costs associated with responding to the lawful directives of any court or agency of competent jurisdiction or for similar economic loss. Such Special Materials include those that violate any national or local contingency plan or the release or threatened release of which may violate or create liability under the Environmental Requirements. Such Special Materials also include (a) asbestos in any form, (b) urea formaldehyde foam insulation, (c) paint containing lead or (d) transformers or other equipment which contain dielectric fluid containing polychlorinated biphenyls (commonly referred to as "PCBs"). Undersigned further represents and warrants to Lender that the premises are not now being used nor have they ever been used in the past for the activities including the use, generation, collection, storage, treatment or disposal of any Special Materials, and in particular, without limiting the generality of the foregoing, the premises are not now being used nor have they ever been used in the past for a landfill, surface impoundment or other area for the treatment, storage or disposal of solid waste (including solid waste such as sludge), Undersigned will not place or permit to be placed any such Special Materials on or near the premises. Nothing herein shall be deemed to prohibit or restrict the use, collection, storage, treatment or disposal in a manner consistent with applicable Environmental Requirements, of insecticides, herbicides, or other pesticides, fertilizers or petroleum products (including gasoline, motor fuel, crankcase oil, heating oil) as part of the agricultural operations now or hereafter conducted by the Undersigned on the premises in a good and husbandlike manner. Undersigned further represents and warrants to Lender that there are no wells or septic tanks or other underground tanks (whether currently in use or abandoned-in-place) on the premises serving any other property and that there are no wells or septic tanks on other property serving the premises. If at any time it is determined that there are Special Materials located on the premises which under any Environmental Requirement require special handling in use, generation, collection, storage, treatment or disposal, Undersigned shall, within 30 days after having obtained actual knowledge thereof, take or cause to be taken, at Undersigned's sole expense, such actions as may be necessary to comply with all Environmental Requirements. If Undersigned shall fail to take such action, Lender may make advances or payments towards performance or satisfaction of the same but shall be under no obligation so to do; and all sums so advanced or paid, including all sums advanced or paid in connection with any judicial or administrative investigation or proceeding relating thereto, including, without limitation to the extent permitted by applicable law, reasonable attorneys' fees, fines or other penalty payments, shall be at once repayable by Undersigned and all sums so advanced or paid shall become a part of the indebtedness secured hereby. Failure of Undersigned to comply with all Environmental Requirements shall constitute and be a default under this instrument. Undersigned hereby agrees to indemnify and hold Lender harmless to the extent permitted by applicable law for all loss, liability, damage, cost and expenses, including

reasonable attorneys' fees, for failure of the premises to comply in all respects with the Environmental Requirements or a breach by Undersigned of any representation, warranty or agreement herein. THE COVENANTS, AGREEMENTS, REPRESENTATIONS, WARRANTIES AND INDEMNITIES OF UNDERSIGNED CONTAINED IN THIS PARAGRAPH SHALL SURVIVE THE OCCURRENCE OF ANY EVENT WHATSOEVER, INCLUDING BUT NOT LIMITED TO, THE PAYOFF OF THE NOTE(S) SECURED HEREBY, THE RELEASE OR FORECLOSURE OF THIS INSTRUMENT, OR THE ACCEPTANCE BY THE LENDER OF A DEED IN LIEU OF FORECLOSURE.

9.    Borrower (or any of them to the extent of their respective obligations) will pay, when due and payable, all amounts secured hereby. Time is of the essence of the said note(s) and any subsequent note(s) secured hereby, and of this Instrument. If Undersigned or Borrower fails to comply with any covenant, condition or agreement in this Instrument or any notes or other evidence of indebtedness, or in any reamortizations, renewals, deferments, extensions or any other written agreement between the Borrower and the Lender, Lender may, at its option, exercise any one or more of the following rights, powers, privileges, and remedies:

a)    Perform the covenants in this Instrument, and in any notes or other evidence of indebtedness hereby secured and all amounts advanced by Lender in so doing shall be due and payable by Borrower to Lender immediately without notice, and shall be secured by this Instrument, and may, at the sole discretion of Lender, bear Interest from the date of advance by Lender at the highest rate provided in any note or other Instrument secured hereby.

b)    Declare any or all amounts and/or obligations secured by this Instrument immediately due and payable without notice.

c)    Have this deed of trust forthwith foreclosed for the whole amount of said sum, interest and costs, and on the application of Lender, its successors or assigns, it shall be lawful for and the duty of Trustee or his duly authorized agent, with notice of hearing and sale as provided by Chapter 45 of the General Statutes of North Carolina at the time of said declaration of the full debt being immediately due and payable, at such time and place as provided in the notice of sale, to expose said lands at public sale to the highest bidder for cash and to convey said lands to the purchaser at said sale. At such sale Lender shall have the right to bid and become the purchaser of the property sold. The successful bidder shall make a deposit of ten percent (10%) of the successful bid at the time of sale; provided, the Trustee may waive this requirement.

10.    Trustee shall apply the proceeds of any sale made under authority granted herein against the following:

a)    All costs of said sale, including the charges for advertising and a reasonable commission not to exceed five percent (5%) of the amount for which the property is sold, as compensation for the services of the Trustee;

b)    All taxes, claims, charges, liens, assessments, judgments and costs of maintenance and repair advanced by Lender under the terms of this Instrument, with interest thereon as herein set out;

c)    All taxes on, or which are liens against, and all claims and charges against the property, outstanding, unpaid and payable, if sale is not made subject thereto;

d)    The principal and interest of the original indebtedness and all subsequent indebtedness hereby secured;

e)    The remainder, if any, of the proceeds of sale shall be paid to Undersigned, or as otherwise provided by law. If the proceeds of any such sale shall not be sufficient to pay the total indebtedness hereby secured, with all Trustee's commissions, expenses, costs, taxes, charges, claims, assessments, liens, judgments, repairs and maintenance, as herein set out, Borrower shall be liable to Lender for the balance due after the application of the proceeds of the sale as herein provided, and may be sued for such balance in any court having jurisdiction.

11.    If Trustee is named as a party to any civil action as Trustee in this deed of trust, the Trustee shall be entitled to employ an attorney-at-law, including Trustee, if a licensed attorney, to represent Trustee in said action and reasonable attorneys' fees shall be paid by Lender and added to the principal of the note or notes secured hereby and bear interest at the highest current rate provided in any note.

12.    If Borrower shall pay all installments of principal and interest as set forth in the said note, and in any subsequent note or notes and/or other payment evidence of indebtedness secured hereby and in this deed of trust and shall comply with all of the terms, covenants and conditions hereof, then this deed of trust shall become null and void.

13.    The term "land" as used in this instrument includes all trees, timber, shrubbery, fixtures, and improvements now and hereafter on the land described in this instrument. Any agent or representative of Lender may enter upon said land at any time for any purpose desired by Lender.

14.    Accounting procedures employed by Lender are for its internal record keeping and shall not be interpretive of the legal rights and duties of the parties.

15.    As a condition hereof and as part of the consideration for the Present Obligations and any future advances secured hereby, all amounts that may hereafter be awarded for condemnation of and tortious injury to any of the land herein described are hereby assigned and shall be payable unto Lender for application, after payment therefrom of attorneys' fees and expenses incurred in connection therewith, on such part of the total Indebtedness secured hereby as Lender may determine, with no duty on Lender to collect same.

16.    As a condition hereof and as part of the consideration for the Present Obligations and any future advances secured hereby, all rents, royalties, profits, and any other income accruing from the land and/or improvements herein described upon and during default under this instrument or the said note are hereby assigned and shall be payable unto Lender for application upon such part of the total Indebtedness secured by this instrument as Lender may determine, with the right in, but no duty upon, Lender to collect same. Lender shall have the right, exercisable at its discretion so long as this deed of trust is in force and effect, to demand in writing the assignment of and transfer to Lender, its successors and assigns, and Undersigned hereby agrees to so assign and transfer, any and all rents, profits, royalties, income or other consideration to be paid or accruing to Undersigned from any oil, natural gas, mineral, timber, leasehold or other interest of any kind and nature whatsoever, derived from, connected with or affecting the within described real property but not otherwise subject to, conveyed and/or secured by this deed of trust, with the right, but no duty, upon Lender, its successors and assigns to collect same.

17. As a condition hereof and as part of the consideration for the present loan and any future advance secured hereby, Undersigned hereby waives and renounces for himself, his heirs, administrators or executors, successors, and assigns, all rights that now exist, or that may hereafter exist, under the laws of the State of North Carolina, in the event of suit against Borrower for any deficiency in the debt hereby secured, after foreclosure sale by the Trustee, or otherwise of the land herein described, to show as defense or setoffs the alleged fair worth of said land; the Borrower agrees to pay the full amount of the total indebtedness secured at any time by this deed of trust, and the full amount of any deficiency therein that may be established by the foreclosure sale of the land herein described, without defense or set-off on account of the alleged fair worth of said land.

18. If the Trustee or his successor(s) shall die, resign, become mentally or physically incompetent or otherwise disqualified, refuse to act, or if a new Trustee is desired by Lender or its successor(s) or assigns, Lender, or its successor(s) or assigns, shall have the right, by paper writing duly executed and registered, to name and appoint another Trustee in the place and stead of the Trustee herein named and appointed, which new Trustee shall have all the duties, rights, powers and privileges of the original Trustee, and the expense of such paper writing and registration shall be paid by Borrower immediately upon demand, and if not so paid, same may be advanced by Lender, its successor(s) or assigns, and shall become a part of the indebtedness secured hereby and may bear interest at the highest rate provided in any note or other instrument secured hereby.

19. As a condition hereof and as part of the consideration for the Present Obligations and any future advances secured hereby, all obligations, assignments, releases of real property and/or personal liability, reamortizations, renewals, deferments, extensions or any other agreement, in writing, made or entered into with Lender by any one or more of the Borrowers, by any party or parties obligated (primarily or otherwise) to pay any or all of the indebtedness secured hereby, or by any party or parties who have given security of any kind for any or all of the indebtedness secured hereby are hereby authorized and consented to by Borrower and Undersigned and shall extend to and be binding upon the heirs, executors, administrators, successors and assigns of the Borrower and Undersigned.

20. As a condition hereof and as part of the consideration for the Present Obligations and any future advances secured hereby, if conveyance, transfer, or other disposition should be made, voluntarily or involuntarily, of the property herein described, or any part thereof, without the written consent of the Lender, then and in that event, and at the option of the Lender and without notice to the Borrower or Undersigned, all sums of money secured hereby shall immediately and concurrently with such conveyance become due and payable and in default whether the same are so due and payable and in default by the specific terms hereof or not.

21. A default under this Instrument or under any other instrument heretofore or hereafter executed by Undersigned or Borrower (or any one or more of them) to Lender or for the benefit of Lender, shall at the option of Lender constitute a default under any one or more or all instruments executed by Undersigned or Borrower (or any one or more of them) to Lender, or for Lender's benefit.

22. An event of default under this Instrument will occur if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce or to make possible the production of an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. Upon default, the entire indebtedness secured hereby shall, at the option of the Lender, become immediately due and payable with interest thereon at the billing rate then in effect without notice, and this instrument may be foreclosed accordingly.

23. All rights, powers, privileges, options and remedies conferred upon and given to Lender are cumulative of all other remedies and rights allowed by law, and may be pursued concurrently, and shall extend to and may be exercised and enjoyed by the successors and assigns of Lender, and by any agent, officer, attorney or representative of Lender, its successors or assigns. All obligations and undertakings of and assignments by Undersigned or Borrower and/or any other parties hereto or hereunder shall extend to and be binding upon heirs, executors, administrators, successors and assigns of Undersigned and/or Borrower, and/or any other parties.

THIS DEED IS EXECUTED BY THE BORROWER IN FAVOR OF, AND THE TERM "LENDER" AS USED HEREIN SHALL INCLUDE, Cape Fear Farm Credit, ACA AND/OR AS AGENT/NOMINEE FOR ANY PARTY PURSUANT TO A MASTER AGREEMENT AMONG IT AND ITS WHOLLY-OWNED SUBSIDIARIES Cape Fear Farm Credit, FLCA AND Cape Fear Farm Credit, PCA, AS THEIR INTERESTS MAY APPEAR.


IN TESTIMONY WHEREOF, the Undersigned has duly executed the foregoing instrument, the day and year first above written.

Signed, Sealed and Delivered in the presence of:

WITNESS: _____

WITNESS: _____

Undersigned:

_____ (SEAL)
Kenneth R Hardin, a/k/a Kenneth Ray Hardin

_____ (SEAL)
Shereda G Hardin, a/k/a Shereda Locklear Hardin

_____ (SEAL)
Cory Kendrick Hardin

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

STATE OF NORTH CAROLINA    }
COUNTY OF Robeson     }   ACKNOWLEDGEMENT BY INDIVIDUAL.

  I, Vivian D. Edwards          , being duly authorized to take acknowledgements of deeds, etc. in North Carolina, do hereby certify that Kenneth R. Hardin, aka Kenneth Ray Hardin and Shereda G. Hardin, aka Shereda Locklear Hardin        personally appeared before me this day and acknowledged the due execution of the foregoing instrument.
  WITNESS my hand and official seal this 15th day of April , 2016 .

(Official Seal)
My commission expires: 04/11/2021

           Signature of Officer
           Notary Public
           Title of Officer

---

STATE OF NORTH CAROLINA    }
COUNTY OF Robeson     }   ACKNOWLEDGEMENT BY INDIVIDUAL

  I, Vivian D. Edwards          , being duly authorized to take acknowledgements of deeds, etc. in North Carolina, do hereby certify that Cory Kendrick Hardin         personally appeared before me this day and acknowledged the due execution of the foregoing instrument.
  WITNESS my hand and official seal this 15th day of April , 2016 .

(Official Seal)
My commission expires: 04/11/2021

           Signature of Officer
           Notary Public
           Title of Officer

---

STATE OF NORTH CAROLINA    }
COUNTY OF       }   ACKNOWLEDGEMENT BY CORPORATION

  I, _____ , certify that _____ personally came before me this day and acknowledged that he/she is _____ a corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its _____ , sealed with its corporate seal, and attested by him(her) self as its _____
  WITNESS my hand and official seal this _____ day of _____ , _____ .

(Official Seal)
My commission expires: _____

           Signature of Officer

           Title of Officer

---

STATE OF NORTH CAROLINA    }
COUNTY OF       }

  The foregoing certificate(s) of _____

_____

is (are) certified to be correct. This instrument was presented for registration this day and hour and duly recorded in the office of the Register of Deeds of _____ County, NC in Book _____ Page _____ .
  This _____ day of _____ , A.D., _____ at _____ o'clock _____ M.

_____  By: _____
Register of deeds      Deputy/Assistant Register of Deeds
Recorded and verified:

STATE OF NORTH CAROLINA    }
COUNTY OF       }

  I HEREBY CERTIFY that the within instrument was filed and lodged for record in my office at _____ M o'clock on the _____ day of _____ , _____ , and duly recorded in Book _____ at Page _____ .

_____
Register of Deeds
G01000NC (2000)       Page 8 of 8

## SCHEDULE "A"

Being all of Tract 1, being 5.52 acres as shown on the map prepared for Earl J. Powers, Jr., Phyllis Marie Powers Stone and Sally H. Powers, prepared by Jimmy J. Turner with Drowning Creek Surveying Co., a Registered Land Surveyor, and recorded in Map Book 48, at Page 19, Robeson County Registry, reference to which is made for a full and complete description.

KRH                     SGH                     CKH

SECURITY AGREEMENT                                    $68,600.00

THIS SECURITY AGREEMENT, made 04/18/2016, by and between the undersigned Kenneth R Hardin, aka Kenneth Ray Hardin and Shereda G Hardin, aka Shereda Locklear Hardin, whose address is 1936 Russ Rd, Lumberton, NC ("Debtor" whether one or more; provided that (when Debtor and Borrower (as defined herein) are not the same person, the term "Debtor" as used herein shall mean the owner of the Collateral (as defined herein) when dealing with the Collateral (as defined herein), Borrower (as defined herein) when dealing with the obligation or debt secured hereby, and may include both where the context so requires) and Cape Fear Farm Credit, ACA whose principal office is located at P.O. Box 2405, Fayetteville, NC ("Secured Party").



**RECITALS:**

1.  Debtor desires to grant to Secured Party security interests in, and Secured Party desires to define its security interests in, certain collateral security for Debtor's present and future liabilities and obligations to Secured Party.

2.  The terms and provisions hereof shall provide for the rights, security interests, privileges and remedies originally granted hereunder and shall reconfirm, as well as augment, supplement and expand, Secured Party's rights, security interests, privileges and remedies set forth in any security agreements or agreements of a similar nature previously or hereafter executed by Debtor in favor of Secured Party.

IN CONSIDERATION OF the foregoing recitals and of any loan or other financial accommodation heretofore, now or hereafter made or granted by Secured Party to Kenneth R Hardin (Kenneth Ray Hardin and Shereda G Hardin, Shereda Locklear Hardin ("Borrower" whether one or more), Debtor hereby agrees with Secured Party as follows:

### I. OBLIGATIONS SECURED

The parties hereto, intending to be legally bound hereby, agree that the security interests granted hereunder in the described Collateral secure the (i) performance by the undersigned of its obligations hereunder and the payment and performance of Borrower of its obligations under all its agreements with Secured Party, as well as (ii) payment of any sums now, heretofore or hereafter owing to Secured Party by Borrower whether or not evidenced by any note or other instrument and whether or not for the payment of money, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, (iii) repayment of any amounts that Secured Party may advance or spend for the maintenance or preservation of the Collateral and any other expenditures that Secured Party may make under the provisions of this Security Agreement or for the benefit of Debtor; (iv) every covenant of Debtor hereunder with regard to the Collateral and (v) any of the foregoing that arise after the filing of a petition by or against Debtor under the U.S. Bankruptcy Code, even if the obligations do not accrue because of the automatic stay; together with all interest thereon and costs of collection thereof, including reasonable attorneys' fees and expenses, as well as all its liabilities and obligations under any other agreements with Secured Party, now and in the future, including all renewals, reamortizations, modifications, deferments, and extensions of the foregoing and including any debt, liability or obligation owing from Borrower to others which Secured Party may have obtained by assignment or otherwise, and further, including all losses, fees, charges, expenses and attorneys' fees chargeable to Borrower's account (to the extent not prohibited by applicable law, whether provided for herein or in any other agreement with Secured Party, all of which liabilities, payments and obligations being referred to herein as the "Indebtedness." Debtor agrees to pay to Secured Party, or order, all Indebtedness listed herein strictly in accordance with their terms and with full recourse, whether incurred by Debtor or Borrower.

### II. GRANT OF SECURITY INTEREST

Debtor hereby gives and grants to Secured Party a continuing lien on and security interest in all of the following described existing and future property of Debtor, wherever located and now owned or hereafter acquired (the "Collateral");

CHECKING THE BOXES BELOW CONSTITUTES THE INCLUSION OF THE COLLATERAL THEREIN DESCRIBED (if space is not sufficient to describe particular items insert "SEE ATTACHED ADDENDUM" under category of Collateral and describe items on addendum).

[X]  GOODS - All goods, as defined in the Uniform Commercial Code in effect under the laws of the State of NC    from time to time, as the same may be amended (the "Code").

_____

[X]  INVENTORY - All inventory (as defined in the Code) of every nature, including supplies, stock-in-trade, raw materials, work in process, including all goods (other than farm products) which are leased by Debtor as lessor, are held by Debtor for sale or lease or to be furnished under contracts of service, or are furnished under a contract of service, or consist of materials used or consumed in Debtor's business, and including all returned, reclaimed and repossessed goods, whether now in Debtor's possession or control or hereafter acquired by way of replacement, substitution, addition or otherwise.

_____

[X]  EQUIPMENT - All equipment (as defined in the Code) and machinery of every type, including furniture, fixtures, boilers, electrical generators, office equipment, equipment supplies, labels, wrappers, containers, cartons, cases; packaging materials, tools and trade fixtures, and all other goods (other than inventory, farm products or consumer goods), and including, without limitation:

_____
_____

[X]  ACCOUNTS - All accounts (as defined in the Code), chattel paper (including electronic chattel paper), notes and other instruments, documents, contracts, choses in action, returned and unearned insurance premiums, tax refunds and all other obligations now or hereafter owing to Debtor, together with all interests of Debtor in goods, the sale or lease of which shall have given or may give rise to any of the foregoing.

_____
_____

[X]  FARM PRODUCTS - All farm products, including all feed, feed ingredients, including soybeans, corn, barley, wheat, soybean meal, soy oil and fish scraps and all other supplies used or produced in a farming operation, all livestock of every type, kind, weight, age, born or unborn, alive, killed or being processed, on hand, in storage, or in transit, all aquatic goods produced in aquacultural operations, and including, without limitation:

G12906BA (0203)                         Page 1 of 7

 

Exhibit C

[x] **CROPS** - All crops grown, growing or to be grown, planted or to be planted on the hereinafter described lands, including, without limitation:

_____
_____
_____
_____

[x] **FIXTURES** - All property that would be a fixture (under applicable state law) on the hereinafter described lands, including the following (list all equipment, machinery and storage facilities affixed to real estate, particularly harvestors, bulk tanks, etc.):

_____
_____
_____

[x] **TIMBER** - All timber subject to a timber conveyance and all timber to be cut and/or harvested thereunder on the hereinafter described lands, including:

_____

[x] **AS-EXTRACTED COLLATERAL** - All oil, gas and other minerals as extracted and related to the hereinafter described lands, including:

_____

The above described crops, fixtures, standing timber and/or as-extracted collateral are or will become located on the land owned or occupied by Debtor in:        Township(s)/City(ies), _____ County(ies)/Parish(es) (describe distance to end name or number of closest road or intersection, amount of acreage). (Optional - if known, deed book and page reference where a legal description of the real estate is contained should be stated). Inclusion of a description of the land does not limit the security interest in all crops, fixtures, standing timber and/or as-extracted collateral in which a security interest is granted, regardless of the location of the Collateral or the accuracy of the description of the land.

_____
_____

[x] **GENERAL INTANGIBLES** - All general intangibles (as defined in the Code), including, without limitation payment intangibles, software, customer lists, books and records, including all correspondence and credit files, tapes, cards, computer runs, computer programs, and other papers and documents, whether in the possession or control of Debtor or any computer service bureau, rights in franchises and sales contracts, patents, copyrights, trademarks, logos, trade names, label designs, brand names, plans, blueprints, patterns, trade secrets, licenses, jigs, dies, molds and formulas.

[x] **INVESTMENT PROPERTY** - All investment property (as defined in the Code), including all securities, whether certificated or uncertificated, security entitlements, securities accounts, commodity contracts and commodity accounts, including, without limitation:

_____

[x] **COMMERCIAL TORT CLAIMS** - The following described commercial tort claim(s) (as defined in the Code) of Debtor (for each claim specify the identity of the obligor(s), nature of the claim, and forum, if any, in which the claim is being or has been litigated):

_____

[x] **DEPOSIT ACCOUNTS** - All deposit accounts (as defined in the Code), including all demand, time, savings, passbook or similar accounts maintained with any bank, including the following (for each Deposit Account specify the identity of the bank, the bank's address, the account number, and the identity of the bank officer responsible for Debtor's relationship with the bank):

_____

[x] **LETTER-OF-CREDIT RIGHTS** - All letter-of-credit rights (as defined in the Code), including all rights to payment and performance under letters-of-credit, including all rights under the following letter(s)-of-credit (for each letter-of-credit, specify the identity of the issuer, the issuer's address, and the letter-of-credit number):

_____

[x] **OTHER COLLATERAL** - Specify (include motor vehicles, mobile homes, certificates of deposit or other specific items or types of property):

_____
_____
_____

[x] **ASSOCIATION EQUITY** - All stock, participation certificates and allocated surplus credits, including rights thereto, now or hereafter issued by Secured Party.

IN ADDITION TO THE COLLATERAL checked above, the term "Collateral" shall include all proceeds and products of and additions to the Collateral; insurance proceeds, accessions, and after-acquired collateral of the same type or types. If the Collateral consists of Crops or Farm Products, the term "Collateral" shall include all insurance proceeds, governmental farm program payments, market loss adjustment payments, subsidies, crop diversion payments, reduced acreage payments and any other crop subsidy payments and all other general or special governmental payments related to the Collateral or to Debtor, regardless of the classification.

### III. WARRANTIES, COVENANTS AND REPRESENTATIONS

Debtor hereby represents, warrants and covenants as follows:

1. The statements contained in Debtor's loan application(s) are true and correct and that the proceeds of the loan or loans secured hereby will be used solely for the purposes set forth in such application(s), and to the extent that any of the Collateral is purchased with the proceeds of any loan or advance secured hereby, Debtor hereby authorizes Secured Party at its option to disburse such proceeds to the seller of such Collateral, and

2. Debtor is the owner of the Collateral and has rights in and the power to transfer the Collateral and grant an effective security interest therein free and clear of liens and encumbrances, prior security interests, agricultural liens, adverse claims and restrictions on transfer or pledge, except as created by this Security Agreement and EXCEPT FOR the following (list any liens against the Collateral; insert None if applicable):

_____

_____ , and

3. Debtor will pay when due all indebtedness secured hereby with interest, together with any rent, taxes, levies, assessments or other claims which are or may become liens against the Collateral, and

4. Debtor will care for and maintain the Collateral in a good and husbandlike manner, will not further encumber, cancel, remove, sell or otherwise dispose of the same without the written consent of Secured Party, and, upon demand, will provide additional Collateral acceptable to Secured Party, and

5. Debtor will insure the Collateral in such amounts and in such manner as may be required by Secured Party and will pay premiums therefor when due, and

6. Debtor shall do, obtain, make, execute and deliver all such additional and further acts, things, deeds, assurances and instruments as Secured Party may require from time to time to vest in and to assure to Secured Party its rights hereunder and in or to the Collateral and proceeds thereof, including waivers from landlords and mortgages, and subordinations of any agricultural lien which may be prior to the lien of Secured Party, and

7. Debtor's chief executive office is located in the following state (the "Chief Executive Office State"): North Carolina , and

8. If an individual, Debtor's state of residence is the "Debtor State." If a corporation, limited liability company, or other limited partnership or limited liability partnership, its state of incorporation or organization is the "Debtor State." If a partnership or other business organization as to which neither the United States of America nor any single state thereof must maintain a public record showing its organization, the state in which its chief executive office is located is the "Debtor State," and

9. Debtor's exact legal name is as set forth in the first paragraph of this Security Agreement and its/his/her Debtor State is as follows:

| Name | Debtor State |
|---|---|
| Kenneth R Hardin, aka Kenneth Ray Hardin | NC |
| Name | Debtor State |
| Shereda G Hardin, Shereda Locklear Hardin | NC |
| Name | Debtor State |
| | |
| Name | Debtor State |
| | ; and |

10. The Collateral is located and will remain in the following state(s) (singularly and collectively the "Collateral State"): North Carolina ; and   and

11. Debtor will report, in form satisfactory to Secured Party, such other information as Secured Party may request regarding the Collateral. Debtor will promptly notify Secured Party of any change in the location of the Collateral or its books and records, and Debtor will not remove the Collateral or its books and records from said location(s) (except for motor vehicles and for inventory sold in the ordinary course of business). Debtor, if an organization, will immediately notify Secured Party, in writing, of any addition to, change in or discontinuance of its chief executive office, or if an individual, any change in its principal residence, and

12. Debtor will at all times during normal business hours, give to Secured Party or its agents full access to, and the right to audit, check, inspect and make abstracts and copies from Debtor's books, records, audits, correspondence and all other papers relating to the Collateral. Secured Party or its agents may enter upon any of Debtor's premises at any reasonable time during business hours and from time to time for the purpose of inspecting the Collateral and any records pertaining thereto, and

13. Debtor shall, upon request of Secured Party, and, without notice to Debtor, Secured Party itself may, in the name of Secured Party or Debtor, at any time (whether or not an event of default (as defined below) shall have occurred), notify account debtors and other obligors on the Collateral (and Debtor's security interest therein) and direct all payments to be made to Secured Party; Secured Party may demand, sue for, collect or receive any money or property payable or receivable on any accounts, other rights to payment, contract rights and general intangibles, and settle, release, compromise, adjust, sue upon, foreclose, realize upon or otherwise enforce any accounts, contract rights or rights in general intangibles as Secured Party may determine (whether or not an event of default shall have occurred), and for the purpose of realizing Secured Party's rights herein, Secured Party may receive and open mail addressed to Debtor and retain and enforce notes, checks, drafts, money orders, documents of title or other forms of payment on behalf of and in the name of Debtor, and

14. Debtor shall immediately notify Secured Party of any event causing a material loss or decline in value of the Collateral and the amount of such loss or depreciation, and

15.    Upon request of Secured Party, Debtor will furnish to Secured Party annually, for each person or other entity obligated to repay the indebtedness secured hereby, within one hundred twenty (120) days after the end of the reporting obligor's fiscal year, a balance sheet as of the end of such fiscal year, and a profit and loss statement for the year then ending, in each case in form and substance acceptable to Secured Party and certified as being true and correct and containing no material misrepresentations or omissions. If the principal amount of the indebtedness secured hereby is in excess of $100,000.00, such financial information shall be so provided without request by Secured Party, and

16.    Debtor will preserve its legal existence (corporate or otherwise) and not, in one transaction or a series of transactions, merge into or consolidate with any other entity or sell all or substantially all of its assets, not change the state of its incorporation, and not change its legal name without providing Secured Party with thirty (30) days prior written notice thereof.

17.    The term "Applicable Environmental Law" shall be defined as any statutory law or case law pertaining to health or the environment, or petroleum products, or oil, or hazardous substances, including without limitation the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") as codified at 42 U.S.C. §9601 et seq.; the Resource Conservation and Recovery Act of 1976, as amended, as codified at 42 U.S.C. §6901 et seq.; and the Superfund Amendments and Reauthorization Act of 1986, as codified at 42 U.S.C. §9671, et seq.; the terms "hazardous substance" and "release" shall have the meanings specified in CERCLA; provided, in the event CERCLA is amended to broaden the meaning of any term defined thereby, such broader meaning shall apply subsequent to the effective date of such amendment; and provided, to the extent that the laws of the Collateral State establish a meaning for "hazardous substance" or "release" which is broader than that specified in CERCLA, such broader meaning shall apply. The Debtor represents and warrants to the Secured Party that, to the best of its knowledge, the Collateral and the Debtor are not in violation of or subject to any existing, pending or threatened investigation or inquiry by any governmental authority, or any response costs or remedial obligations under any Applicable Environmental Law and this representation and warranty would continue to be true and correct following disclosure to the applicable governmental authorities of all relevant facts, conditions and circumstances, if any, pertaining to the Collateral; that, to the best of its knowledge, the Debtor has not obtained and is not required to obtain any permits, licenses or similar authorizations to construct, occupy, operate or use any buildings, improvements, fixtures or equipment forming a part of the Collateral by reason of any Applicable Environmental Law; that to the best of its knowledge, the Debtor has taken all steps necessary to determine and has determined that no petroleum products, oil, hazardous substances, or solid wastes have been disposed of or otherwise released on the Collateral; and that, to the best of its knowledge, the use which the Debtor has made, makes or intends to make of the Collateral will not result in the location on or disposal or other release of any petroleum products, oil, hazardous substances or solid waste on or to the Collateral. The Debtor hereby agrees to pay any fines, charges, fees, expenses, damages, losses, liabilities, response costs, or attorneys' fees and expenses arising from the application of any such Applicable Environmental Law to the Collateral or the Secured Party. This indemnity shall survive any payment of the indebtedness and foreclosure of the Security Agreement, repossession of the Collateral or the taking by the Secured Party of any action in lieu of foreclosure or repossession. The Debtor agrees to notify the Secured Party in the event that any governmental agency or other entity notifies the Debtor that it may not be in compliance with any Applicable Environmental Laws. The Debtor agrees to permit the Secured Party to have access to the Collateral at all reasonable times in order to conduct, at the Secured Party's expense, any test which the Secured Party deems necessary to ensure that the Debtor and the Collateral are in compliance with Applicable Environmental Laws. Debtor further warrants that no funds secured hereby will be used for a purpose that will contribute to the excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

## IV. EVENTS OF DEFAULT

The occurrence of any of the following described events shall constitute a default hereunder:

1.    Any failure by Debtor to observe or to perform any condition, covenant or undertaking under this Security Agreement, or any breach by Debtor of any warranty or representation in this Security Agreement, or

2.    Debtor commits a breach or default under, or Debtor breaches any warranty or representation made by Debtor in any note, agreement, assignment, security agreement, mortgage, deed of trust or related agreement or document between the parties hereto, whether previously executed or executed in the future, or

3.    There is any material loss, deterioration or decline in the value of the Collateral which is not covered by insurance, or

4.    Debtor shall default under any obligation or undertaking of Debtor, if the effect of such default is to cause, or permit the holder of such obligation or undertaking or any representative on its holder's behalf to cause, such obligation or undertaking, or any part thereof, to become due prior to its maturity date or prior to its regularly scheduled dates of payment. A default under any agreement creating a lien on the Collateral shall be a default hereunder, regardless of acceleration or non-acceleration of the obligation secured thereby, or

5.    Debtor fails to make any payment of principal or interest to Secured Party on any note held by Secured Party or under any agreement with Secured Party on or before the date such payment is due, or, if the note is a demand instrument, fails to tender payment in full when demand is made, or

6.    Debtor fails to pay any other charges due to Secured Party within five (5) days after it is billed or demanded by Secured Party, or

7.    A voluntary application is made for the appointment of a receiver, liquidator, custodian, trustee or similar official or similar fiduciary for Debtor or Debtor's property and the application is not dismissed within thirty (30) days after being made, or

8.    Any execution or distraint process is issued against Debtor or its property and is not removed, dismissed or satisfied within thirty (30) days, or

9.    Any final judgment for the payment of money shall be rendered by a court of record against Debtor and Debtor shall not discharge the same within thirty (30) days from the date of entry thereof, or

10.    Debtor becomes insolvent, makes an assignment for the benefit of creditors, or offers a composition or extension to creditors, or

11.    The commencement by or against Debtor of (i) a case under any chapter of the Federal Bankruptcy Code, as amended, or (ii) a proceeding for reorganization or readjustment of any of Debtor's debts or for any other relief under any other state or federal law now or hereafter enacted for the relief of debtors, or (iii) a proceeding for dissolution, liquidation or an arrangement, which case or proceeding is not vacated, terminated or dismissed within thirty (30) days after such commencement, or

12.    Any attachment, execution or levy is made on any of the Collateral, or

13.    Debtor shall fail to comply with, or become subject to, any administrative or judicial proceeding under any Federal, state or local (i) hazardous waste or environmental law, (ii) asset forfeiture or similar law which can result in the forfeiture of property, or (iii) other law, where noncompliance may have any significant effect on the Collateral, or impair the ability of the Debtor to pay the indebtedness and perform strictly in accordance with the terms of this Security Agreement, or

14.    Debtor uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce or to make possible the production of an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M, or

15.    Secured Party shall receive at any time evidence that the security interest granted hereunder is not prior to all other security interests in or other liens or encumbrances on or claims to the Collateral, except those, if any, set forth in Section 2 of Article III hereof, or

16.    If Debtor fails to furnish financial information as required pursuant to Section 15 of Article III hereof and such failure continues for thirty (30) days after written notice to Debtor of such failure.

## V. RIGHTS AND REMEDIES ON DEFAULT

Upon the occurrence of any of the foregoing events of default, Secured Party shall have the option to declare all indebtedness or obligations of Debtor under this Security Agreement and any other agreement, note or undertaking under which Debtor is obligated to Secured Party, whether previously or simultaneously executed or executed in the future, including all liabilities under any agreements assigned to Secured Party, with recourse, together with interest thereon, to become immediately due and payable without further notice or demand by Secured Party, and to exercise from time to time all the rights and remedies that Secured Party may have under the UCC, at law, in equity or other remedy, together with the following rights and remedies:

1.    To the extent permitted by law, the right to take possession of the Collateral with or without judicial process,

2.    The right peaceably, by its own means and with or without judicial assistance, to enter into or on Debtor's premises and take possession of the Collateral or render it unusable, and to sell, lease or otherwise dispose of this Collateral either with or without taking possession of the Collateral, without any liability for rent, storage, utilities or other sums (and Debtor shall not resist or interfere with such action),

3.    The right to require Debtor to assemble any of the Collateral and make it available to Secured Party at any place to be designated by Secured Party which is reasonably convenient to Debtor and Secured Party,

4.    If permitted by law, the right to apply for and have a receiver, custodian or similar fiduciary appointed by any court of competent jurisdiction in order to manage, protect and preserve the Collateral and continue the operation of Debtor's business and to collect all revenues and profits thereof and apply the same to the payment of all expenses and other charges of such receivership, including the compensation of the receiver, and to the payment of Debtor's liabilities and indebtedness secured hereby, and

5.    If Debtor defaults on or fails to perform any covenant, warranty or representation within this Security Agreement, the right, at Secured Party's option, to make payments or incur expenses to relieve the effect of the default or restore the performance, provided, however, that Secured Party shall be under no obligation to do so, and further provided that any such action by Secured Party shall not constitute a waiver of any such default. Any payment made or expense incurred by Secured Party in relieving the effect of any such default or restoring any such performance shall be a liability secured by the Collateral and shall constitute part of Debtor's liabilities and obligations to Secured Party, together with interest thereon at the highest rate set forth in any agreement or note from Debtor to Secured Party. Debtor shall, to the extent not prohibited or limited by applicable law, reimburse Secured Party for all costs, expenses, charges and reasonable attorneys' fees incurred by Secured Party to enforce the provisions of this Security Agreement, including its costs of foreclosure and costs of obtaining money damages, and all costs, expenses, charges and reasonable attorneys' fees incurred by Secured Party to collect any present or future liability or obligation owing by Debtor to Secured Party, together with interest thereon at the highest rate set forth in any agreement or note from Debtor to Secured Party. Notwithstanding anything to the contrary herein contained, Secured Party reserves the right to demand payment in full of any obligation of Debtor payable to Secured Party on demand without occurrence of any of the foregoing events of default.

## VI. FORECLOSURE PROCEDURES

1.    Debtor hereby agrees that a notice sent to it at least ten (10) days before the time of any intended public sale or of the time after which any private sale or other disposition of the Collateral is to be made shall be deemed to be reasonable notice of such sale or other disposition.

2.    Secured Party has no obligation to clean-up or otherwise prepare the Collateral for sale.

3.    Secured Party has no obligation to attempt to satisfy the indebtedness secured hereby by collecting from any other person liable for such indebtedness, and Secured Party may release, modify or waive any collateral provided by any other person to secure any of such indebtedness, all without affecting Secured Party's rights against Debtor. Debtor waives any right it may have to require Secured Party to pursue any third person for any of said indebtedness.

4.    Secured Party may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral, and compliance will not be considered adversely to affect the commercial reasonableness of any sale or other disposition of the Collateral.

5.    Secured Party may sell the Collateral without giving any warranties as to the Collateral. Secured Party may specifically disclaim any warranties, express or implied, including merchantability and fitness for a particular purpose, and any such disclaimer will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral.

6.    If Secured Party sells any of the Collateral on credit, Debtor will be credited only with payments actually made by the purchaser, received by Secured Party and applied to the indebtedness of said purchaser. In the event that the purchaser fails to pay for the Collateral and Secured Party resells any of the same, Debtor shall be credited with the proceeds of the resale.

7.    Secured Party shall have no obligation to marshal any assets in favor of Debtor or against or in payment of any of the specific indebtedness secured hereby or any other obligation owed to Secured Party by Debtor or any other person.

8.    In the event Secured Party purchases the Collateral or any part thereof, Secured Party may pay for the Collateral purchased by crediting some or all of the indebtedness.

## VII. PERFECTION OF SECURITY INTERESTS

1.    Debtor hereby authorizes Secured Party from time to time to file a financing statement or financing statements, expressly including in lieu filings, continuation statements and amendments, that Secured Party deems necessary to perfect its security interests, describing the Collateral and containing any information required by Article 9 for the sufficiency or filing office acceptance thereof. Debtor will reimburse Secured Party for the cost of filing any such financing and continuation statements on demand. Debtor authenticates all such filings and agrees that UCC filings may be made without notice to Debtor and without Debtor's signature.

2.    Secured Party may, from time to time, request from the appropriate filing officer or filing officers of each Collateral State, the Chief Executive Office State and the Debtor State an official report confirming the filing of a financing statement describing the security interests granted herein and indicating any other security interests, agricultural liens or other interests in the Collateral on file with such filing officer, and Debtor will reimburse Secured Party for the cost thereof on demand.

3.    Debtor shall have possession of the Collateral, except where expressly otherwise provided in this Security Agreement or where Secured Party elects to perfect its security interest by possession in addition to the filing of a financing statement.

4.    Where the Collateral is in the possession of a third party, Debtor will join with Secured Party in notifying the third party of Secured Party's security interest and obtaining an acknowledgement from the third party that it is holding the Collateral for the benefit of Secured Party. Debtor will further instruct such third party to provide reasonable access to the Collateral and any records in such party's possession relating to the Collateral to Secured Party, without notice to or further consent from Debtor.

5.    Debtor will cooperate with Secured Party in obtaining control with respect to Collateral consisting of (i) Deposit Accounts, (ii) Investment Property, (iii) Letter-of-credit Rights, and (iv) electronic chattel paper. Debtor shall notify Secured Party within ten (10) days after any change in the jurisdiction of a bank, issuer of an uncertificated security, issuer of or nominated person under a letter of credit, securities intermediary and commodity intermediary so that Secured Party may file any additional financing statements deemed desirable by Secured Party to continue its perfection and lien status subsequent to any such change.

6. If the Collateral includes chattel paper, Debtor will not create any chattel paper without placing a legend thereon acceptable to Secured Party indicating that Secured Party has a security interest in said chattel paper.

7. If the Collateral taken includes commercial tort claims, Debtor shall immediately notify Secured Party in writing of the details thereof (specifying the identity of the obligor(s), nature of the claim, and forum, if any, in which the claim is being or has been litigated) and shall thereupon, at Secured Party's request, grant to Secured Party in a writing in form and substance satisfactory to Secured Party a security interest therein and in the proceeds thereof, all upon the same terms as those contained in this Security Agreement.

8. If the Collateral taken includes deposit accounts, Debtor shall immediately notify Secured Party in writing of a description of said deposit account and shall promptly (within no more than ten (10) days after the acquisition thereof) notify Secured Party in writing of a description of any such deposit account thereafter acquired by Debtor (for each deposit account specifying the identity of the bank, the bank's address, the account number, and the identity of the bank officer responsible for Debtor's relationship with the bank), and shall thereupon, at Secured Party's request, grant to Secured Party in a writing in form and substance satisfactory to Secured Party a security interest therein and in the proceeds thereof, all upon the same terms as those contained in this Security Agreement.

9. If the Collateral taken includes letter-of-credit rights, Debtor shall immediately notify Secured Party in writing of a description of said letter-of-credit and shall promptly (within no more than ten (10) days after the acquisition thereof) notify Secured Party in writing of a description of any such letter-of-credit thereafter issued for the benefit of Debtor (for each letter-of-credit specifying the identity of the issuer, the issuer's address, and the letter-of-credit number), and shall thereupon, at Secured Party's request, grant to Secured Party in a writing in form and substance satisfactory to Secured Party a security interest in the rights to payment and performance thereunder and the proceeds thereof, all upon the same terms as those contained in this Security Agreement.

10. Debtor will not allow any of the Collateral which does not constitute Fixtures as of the date of this Security Agreement to become affixed to any real property in any manner that would change its nature from that of personal property to real property or to a fixture.

11. Secured Party has no duty to collect any income accruing from the Collateral or to preserve any rights relating to the Collateral. All risk of loss with respect to the Collateral remains with Debtor.

12. Debtor will execute from time to time any documents and shall take such action as shall be required by Secured Party to perfect the security interest granted herein or to effectuate the purposes of this Security Agreement.

## VIII.  MISCELLANEOUS PROVISIONS

1. Debtor hereby irrevocably authorizes Secured Party, or its agents, on its behalf, to complete and supply any omission or blank space in this Security Agreement or in any other document executed by Debtor and delivered to Secured Party. Debtor further agrees to execute any further documents, all of which are hereby fully authenticated by Debtor to the extent possible, and to take any further actions reasonably requested by Secured Party to evidence or perfect the security interest granted herein in the Collateral, to maintain the priority of the security interest or to effectuate the rights granted to Secured Party herein.

2. As used herein, the term "UCC" means the Uniform Commercial Code, as adopted in the state of NC (the "State"). Except as otherwise provided in this Section VIII, any term defined in the UCC and used but not defined in this Security Agreement has the meaning when used herein given to such term in the UCC. No reference to "proceeds" in this Security Agreement authorizes any sale, transfer or other disposition of the Collateral by Debtor. The term's "includes" and "including" are not limiting; the term "or" is not exclusive; and the term "all" includes "any" and the term "any" includes "all".

3. Secured Party's failure or delay at any particular time to exercise a right, remedy, privilege or option herein contained shall not be construed as or constitute a waiver of such or of any other warranty, undertaking, right, privilege, remedy or option in the future, or of any subsequent breach, and shall in no way affect or impair Secured Party's rights or its security interests or liens as herein provided or Debtor's liability hereunder. No delay or omission on the part of Secured Party in exercising any right shall operate as a waiver of such right or any other right. All Secured Party's rights and remedies, whether evidenced hereby or by any other agreement, instrument or paper, shall be cumulative and may be exercised singularly or concurrently. Secured Party may proceed against any of the Collateral, or any other Collateral, in any order.

4. Secured Party shall not be required to post any bond or furnish surety or security before asserting any right, claim, possession, dominion or control over, in or to the Collateral.

5. All covenants, agreements, representations and warranties made herein shall be deemed to be material and relied upon by Secured Party, and shall survive the execution and delivery of this Security Agreement.

6. All of Secured Party's rights hereunder shall inure to the benefit of its successors and assigns, and all obligations of Debtor shall be binding on Debtor's successors and assigns and upon all persons who shall become bound as a debtor to this Security Agreement, but Debtor may not assign any of its rights or obligations under this Security Agreement without Secured Party's prior written consent, and any such assignment made without the prior written consent of Secured Party shall be void.

7. Secured Party may assign its rights and interests under this Security Agreement. All of Secured Party's rights hereunder shall inure to the benefit of its successors and assigns. The term "Secured Party" includes any agent or representative of the Secured Party and assigns on whose behalf Secured Party is acting as an agent or representative, which capacity need not be disclosed. If an assignment is made, Debtor shall render performance under this Security Agreement to the assignee. Debtor waives in favor of any assignee of Secured Party, and agrees not to assert against such assignee, any claims, defenses or set-offs which either could assert against Secured Party, except defenses which cannot be waived.

8. It is the intent of the parties hereto that this Security Agreement secures existing and future indebtedness and notwithstanding the reduction of the amount(s) secured hereby at any time to zero, this Security Agreement shall remain in full force and effect until a duly executed Termination Statement(s) is filed of record terminating Secured Party's interest in the Collateral.

9. If more than one debtor signs this Security Agreement, or if any subsidiary of Debtor joins this Security Agreement and becomes a debtor hereunder, the liability of all Debtors shall be joint and several, and the term "Debtor" as used herein shall mean all such Debtors, collectively and severally, and it is expressly understood and agreed that Secured Party, upon the occurrence of an Event of Default, may, at its option, proceed against any one or more of Debtors named herein, without impairing the right of Secured Party to proceed against all of Debtors collectively. The right of Secured Party to proceed against any one or more of Debtors shall in no way operate to release or affect the liabilities, covenants, warranties, representations and undertaking of any other Debtor named herein.

10. All parties hereto and all guarantors, sureties, endorsers, and co-makers, consent and agree without further notice to any of them, and without affecting the liability of any of them, that: (i) performance of any obligation by any party may be waived, extended or accelerated by Secured Party, (ii) any credit arrangement may be renewed, extended or remarshaled in whole or in part, (iii) any Collateral may be exchanged, surrendered, released or otherwise dealt with as Secured Party may determine, (iv) any party may be released totally or partially of liability, and (v) any defenses that may be available if Secured Party fails to perfect a security interest in property in accordance with applicable laws are waived.

All parties hereby severally waive demand, presentation, protest and notice of protest and waive the benefit of all exemption laws now existing or hereafter enacted to the extent set forth in any note or other instrument secured hereby and, in any event, to the extent of the property described herein, and further waive any defenses, right to set-off or right of subrogation which they or any of them may or might have against Secured Party, its successors or assigns, and hereby waive any defense which they or any of them may or might have in connection with the exchange, sale, surrender or other handling or disposition of any Collateral.

11.    Should any provision of this Security Agreement be found to be void, invalid or unenforceable by a court or panel of arbitrators of competent jurisdiction, that finding shall affect only the provisions found to be void, invalid or unenforceable and shall not affect the remaining provisions of this Security Agreement.

12.    This Security Agreement is the entire agreement of Debtor and Secured Party concerning the subject matter hereof, and any modification to this Security Agreement must be made in writing and signed by the party adversely affected thereby.

13.    Any notices required by this Security Agreement shall be deemed to be delivered when a record has been (i) deposited in any United States postal box if postage is prepaid, and the notice properly addressed to the intended recipient to the address stated on the first page of this Security Agreement or such other address as the respective parties may provide to the other(s) in writing, (ii) received by telecopy, or (iii) when personally delivered. If Debtor makes an authenticated demand pursuant to the UCC, such authenticated demand will be deemed to be received by Secured Party only when the Secured Party received the request at the address stated on the first page of this Security Agreement (the "notice address"). Debtor agrees that Secured Party shall have no duty or obligation to respond to an authenticated demand and will have no notice of an authenticated demand until the Secured Party actually receives the demand at the notice address.

14.    This Security Agreement is being executed and delivered in the State, and shall be governed by and construed and enforced in accordance with the laws of the State.

THIS DOCUMENT IS EXECUTED BY DEBTOR IN FAVOR OF, AND THE TERM "SECURED PARTY" AS USED HEREIN SHALL INCLUDE, Cape Fear Farm Credit, ACA FOR ITSELF AND/OR AS AGENT/NOMINEE FOR ANY PARTY PURSUANT TO A MASTER AGREEMENT AMONG IT AND ITS WHOLLY-OWNED SUBSIDIARIES Cape Fear Farm Credit, FLCA AND Cape Fear Farm Credit, PCA , AS THEIR INTERESTS MAY APPEAR, AT THE OPTION OF SECURED PARTY, ANY DEFAULT UNDER THE TERMS AND CONDITIONS OF ANY OTHER WRITTEN INSTRUMENT EXECUTED BY DEBTOR (MEANING IN THIS CONTEXT THE OWNER OF THE COLLATERAL OR BORROWER OR BOTH) AND OWNED, HELD OR SERVICED BY SECURED PARTY IN ANY OF THE AFORESAID CAPACITIES SHALL CONSTITUTE A DEFAULT UNDER THIS DOCUMENT.

IN WITNESS WHEREOF, the undersigned have caused this Security Agreement to be executed the day and year aforesaid.
DEBTOR:

_Kenneth R Hardin_ _____ (SEAL)
Kenneth R Hardin, aka Kenneth Ray Hardin

_Shereda G Hardin_ _____ (SEAL)
Shereda G Hardin, aka Shereda Locklear Hardin

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

SECURED PARTY:
Cape Fear Farm Credit, ACA

BY:
Name:  Nancy S Byrd          _Nancy S Byrd_

Signature: _____    Title: Related Services Manager

$60,600.00

## ADDENDUM TO SECURITY AGREEMENT

Addendum to Security Agreement dated April 15, 2016 _____ (the "Security Agreement").

WHEREAS, Kenneth R Hardin and Shereda G Hardin, aka Shereda Locklear Hardin (the "Debtor" whether one o more; provided that where Debtor and Borrower (as defined herein) are not the same person, the term "Debtor" as used herein shall mean th owner of the Collateral (as defined in the above Security Agreement) when dealing with said Collateral, Borrower (as defined herein) when dealin with the obligation or debt secured thereby, and may include both where the context so requires) has previously or herewith delivered to Cape Fe Farm Credit, ACA (the "Secured Party") the above Security Agreement granting to Secured Party a security interest in certain farm products (the "Collateral") described herein as collateral security for money borrowed from Secured Party by Kenneth R Hardin, aka Kenneth Ray Hardin an Shereda G Hardin, aka Shereda Locklear Hardin ("Borrower").

WHEREAS, Debtor hereby agrees that the following additional terms and conditions are hereby made a part of the Security Agreement and thi Addendum is specifically incorporated therein by reference;

1.    Debtor hereby furnishes to Secured Party the following listing of potential Buyers, Commission Merchants and Sales Agents and represents to Secured Party that such listing contains the names and addresses of each and every Buyer, Commission Merchant or Sale Agent to or through whom Debtor may sell all or any portion of the farm products Collateral described in the Security Agreement. (NOTE: If more space is needed, please indicate that a schedule is attached and list additional information on the schedule to this addendum)

| Name | Complete Mailing Address |
|---|---|
| Perdue Agribusiness | PO Box 1657 |
| | Salisbury , MD 21802 |

Designate as a "Buyer","Commission Merchant" or "Sales Agent"        Farm Product
Buyer                                                            Grain

| Name | Complete Mailing Address |
|---|---|

Designate as a "Buyer","Commission Merchant" or "Sales Agent"        Farm Product

| Name | Complete Mailing Address |
|---|---|

Designate as a "Buyer","Commission Merchant" or "Sales Agent"        Farm Product

| Name | Complete Mailing Address |
|---|---|

Designate as a "Buyer","Commission Merchant" or "Sales Agent"        Farm Product

| Name | Complete Mailing Address |
|---|---|

Designate as a "Buyer","Commission Merchant" or "Sales Agent"        Farm Product

| Name | Complete Mailing Address |
|---|---|

Designate as a "Buyer","Commission Merchant" or "Sales Agent"        Farm Product

| Name | Complete Mailing Address |
|---|---|

Designate as a "Buyer","Commission Merchant" or "Sales Agent"        Farm Product

| Name | Complete Mailing Address |
|---|---|

Designate as a "Buyer","Commission Merchant" or "Sales Agent"        Farm Product

| Name | Complete Mailing Address |
|---|---|

Designate as a "Buyer","Commission Merchant" or "Sales Agent"        Farm Product

Debtor agrees to update the above list by notifying Secured Party in writing of the name and address of any additional Buyer(s), Commission Merchant(s) or Sales Agent(s) to or through whom Debtor may sell any portion of the Collateral immediately upon becoming aware of such additional person(s), but in no event later than seven (7) days prior to any sale to or through any such person(s).




2.      Debtor understands that if any farm products included in the Collateral are sold to or through any person not included in the a above list or in a subsequent written notice delivered to Secured Party in a timely manner as provided above, and if Secured Party has not received a an accounting (including the proceeds) of such sale within ten (10) days after such sale, then UNDER FEDERAL LAW DEBTOR SHALL BE S SUBJECT TO A FINE IN THE AMOUNT OF $5,000 OR 15% OF THE VALUE OR BENEFIT RECEIVED FROM SUCH SALE, WHICHEVER IS G GREATER.  In addition, if Debtor fails to provide written notice and if Secured Party has not received an accounting as aforesaid, such failure shall c constitute an Event of Default hereunder.

3.      Debtor hereby authorizes Secured Party, at its option, to give oral or written notice of its security interest (including the amount s secured thereby), in the Collateral, to any person to or through whom Debtor may potentially sell any portion of the Collateral (whether or not such f person has been identified by Debtor to Secured Party as a potential Buyer, Commission Merchant or Sales Agent). Debtor agrees to pay to t Secured Party immediately upon its request all Secured Party's mailing and postage expenses incurred in connection with sending such notices.

4.      Debtor understands and agrees that the provisions contained in this Addendum are intended to enable Secured Party to protect t its security interest in the Collateral, and nothing herein is intended or should be interpreted to constitute a consent by Secured Party to any sale of t the Collateral to any person, or to modify or amend the terms of the Security Agreement relating to the sale of the Collateral. Except as r supplemented by this Addendum, the Security Agreement shall remain in full force and effect in accordance with its terms.

THIS DOCUMENT IS EXECUTED BY DEBTOR IN FAVOR OF, AND THE TERM "SECURED PARTY" AS USED HEREIN SHALL INCLUDE, Cape Fear Farm Credit, ACA FOR ITSELF AND/OR AS AGENT/NOMINEE FOR ANY PARTY PURSUANT TO A MASTER . AGREEMENT AMONG IT AND ITS WHOLLY-OWNED SUBSIDIARIES Cape Fear Farm Credit, FLCA AND Cape Fear Farm Credit, PCA, AS THEIR INTERESTS MAY APPEAR, AT THE OPTION OF SECURED PARTY, ANY DEFAULT UNDER THE TERMS AND CONDITIONS OF ANY OTHER WRITTEN INSTRUMENT EXECUTED BY DEBTOR (MEANING IN THIS CONTEXT THE OWNER OF THE COLLATERAL OR BORROWER OR BOTH) AND OWNED, HELD OR SERVICED BY SECURED PARTY IN ANY OF THE AFORESAID CAPACITIES SHALL CONSTITUTE A DEFAULT UNDER THIS DOCUMENT.

Executed the 15th   day of April     , 2016   .

DEBTOR:

_Kenneth R. Hardin_ _____   (SEAL)
Kenneth R Hardin, a/k/a Kenneth Ray Hardin

_____   (SEAL)
Shereda G Hardin, a/k/a Shereda Locklear Hardin

_____   (SEAL)

_____   (SEAL)

_____   (SEAL)

_____   (SEAL)

_____   (SEAL)

_____   (SEAL)

_____   (SEAL)

_____   (SEAL)

Exhibit A
Attachment to Security Agreement Dated April 15, 2016
By and Between Cape Fear Farm Credit, ACA and Kenneth R. Hardin, aka Kenneth Ray Hardin, and
Shereda G. Hardin, Shereda Locklear Hardin

$68,600.00

All of Debtor's now existing and all of Debtor's hereafter acquired right, title and interest in the following property and property rights (each term used herein that is defined in Article 9 of the North Carolina Uniform Commercial Code (UCC) will have the meaning given to such term in the UCC):

All of Debtor's personal property and personal property rights, whether now existing or hereafter owned, acquired or arising, or in which Debtor now has or hereafter acquires any rights (inclusive of rights to grant a security interest), wherever located and whether in Debtor's possession and control, in transit, in storage or in the possession and control of a third party for Debtor's benefit or otherwise, and including, but not limited to, any and all of Debtor's now existing or hereafter acquired goods, accounts, account receivables, contracts and contract rights, inventory, equipment, fixtures, chattel paper, instruments, investment property, letter of credit rights, deposit accounts, commercial tort claims, general intangibles, payment intangibles, cash and cash proceeds, certificates of title and bills of sale, documents, crops and other farm products, as-extracted collateral, stocks, bonds, securities and other financial assets, securities, commodities and other brokerage or financial assets accounts, letters of credit, security deposits and other deposits, money, intellectual property and intellectual property rights, computer and information technology systems and other types of systems, computer hardware and software, cash, standing timber, timber to be cut and cut-timber, oil, gas and other minerals extracted or to be extracted, shrubbery and other landscape, apparatus, building materials and components, leases and other rental agreements and associated rents, issues and profits, together with (1) any and all improvements, accessions and additions thereto and replacements or substitutions therefor, and (2) any and all present and future (i) books and records, warranties and claims on warranties, and any and all other contracts and agreements relating thereto or used in connection therewith, and (ii) proceeds, products and progeny of any and all of the foregoing property and property rights and other rights, claims or benefits arising from, pertaining to or associated with any and all of the foregoing property and property rights, including, without limitation, any and all claims against third parties for loss of, damage to or destruction of any and all of the property or property rights described herein, insurance proceeds and unearned premiums on policies of insurance, and condemnation proceeds or proceeds in-lieu of condemnation.

If more than one Debtor, the foregoing collateral description applies to the interests of each such Debtor and all such Debtors, as their respective interests may appear.


_Kenneth R. Hardin_
Kenneth R. Hardin, aka Kenneth Ray Hardin

_Shereda S. Hardin_
Shereda G. Hardin, aka Shereda Locklear Hardin

**SECURITY AGREEMENT**

THIS SECURITY AGREEMENT, made 03/03/2014, by and between Cape Fear Farm Credit, ACA , hereinafter called "Secured Party," and the undersigned Debtor (as defined herein).

IN CONSIDERATION OF any loan or other financial accommodation heretofore, now or hereafter made or granted by Secured Party to Kenneth R Hardin and Shereda G Hardin hereinafter (whether one or more) called "Borrower," in the amount of Seventy Six Thousand Eight Hundred Seventy Six and 00/100 Dollars ($76,876.00) (for which Borrower has executed a note(s), which hereby is (are) expressly made a part hereof), and to secure the repayment of such loan(s), and of all additional loans and advances that may be made, in the sole discretion of Secured Party, by Secured Party to Borrower, and all renewals, reamortizations, deferments, modifications, and extensions thereof, and all other indebtedness of Borrower to Secured Party, now due or to become due or hereafter to be contracted, with all interest hereon and costs of collection including reasonable attorneys' fees, the undersigned, Kenneth R Hardin and Shereda G Hardin, hereinafter called "Debtor" (whether one or more; provided however, where Debtor and Borrower are not the same person, the term "Debtor" as used herein shall mean the owner of the collateral when dealing with the collateral, Borrower when dealing with the obligation or debt, and may include both where the context so requires), hereby sells, conveys and grants unto Secured Party, its successors and assigns, pursuant to the Uniform Commercial Code - Secured Transactions Act (the "UCC"), as adopted in NC (the "State"), a security interest in the following described property (collectively, the "Collateral"):

see attached

_____
_____
_____
_____
_____
_____
_____

all personal property hereafter acquired with the proceeds of the foregoing described loan(s) and the foregoing described additional loans and advances;

all property, goods and chattels of the same classes as those hereinabove described which are acquired by Debtor subsequent to the execution of this agreement and prior to its termination, including all increases, substitutions and replacements thereof and additions and accessions thereto, wherever located;

if above collateral includes livestock, all hay, grass and grain and other feed and forage, owned by Debtor, located on and/or planted and growing and that may be planted and grown on the lands hereinabove described; and,

all products and proceeds of the foregoing.

Debtor warrants title to the Collateral herein described and that Debtor owns it free and clear of all liens, encumbrances and claims and prior security interests and that Debtor will defend title thereto in favor of Secured Party; further, that Debtor will not sell or otherwise dispose of the Collateral without the prior written consent of Secured Party. Debtor represents that its exact legal name is as set forth in the first paragraph of this agreement and that its chief executive office is located in the state of NC . Debtor represents that, if an individual, his or her state of residence is, or if a corporation, limited liability company, limited liability partnership, or limited partnership, its state of incorporation or organization is, or if a partnership or other business organization as to which neither the United States of America nor any single state thereof must maintain a public record showing its organization, the state in which its chief executive office is located is, the state of NC (the "Debtor State"). Debtor, if an organization, will immediately notify Secured Party, in writing, of any addition to, change in or discontinuance of its chief executive office. If an individual, Debtor will immediately notify Secured Party of any change in its state of principal residence. Debtor will notify Secured Party, with thirty (30) days prior written notice, of any change to its legal name. Debtor represents that the Collateral, as well as Debtor's books and records, will be kept at the following premises of Debtor in the following state(s) (the "Collateral States"): North Carolina .

Debtor will at Secured Party's request from time to time execute financing statements pursuant to the UCC. Debtor hereby authorizes Secured Party from time to time to file a financing statement or financing statements, expressly including continuation statements, describing the Collateral and containing any information required for the sufficiency or filing office acceptance thereof. Debtor will reimburse Secured Party for the cost of filing any such financing and continuation statements on demand. Where Collateral is in the possession of a third party, Debtor will join with Secured Party in notifying the third party of Secured Party's security interest and obtaining an acknowledgment from the third party that it is holding the Collateral for the benefit of Secured Party. Debtor will cooperate with Secured Party in obtaining control with respect to Collateral consisting of (i) deposit accounts, (ii) investment property, (iii) letter-of-credit rights, and (iv) electronic chattel paper. If the Collateral includes chattel paper, Debtor will not create any chattel paper without placing a legend thereon acceptable to Secured Party indicating that Secured Party has a security interest in said chattel paper. Debtor will execute from time to time any documents and shall take such action as shall be required by Secured Party to perfect the security interest granted herein or to effectuate the purposes of this agreement.

A default under this instrument or under any other instrument heretofore or hereafter executed by Debtor to Secured Party, or a default by Debtor under any instrument(s) constituting a lien prior to the lien of this instrument, shall, at the option of Secured Party, constitute a default under this agreement and any one or more of any and all other instruments executed by Debtor in favor of Secured Party.

In the event that a default under this agreement shall occur by reason of a default under any other instrument as stated above, or Debtor shall fail to make any payment when due under any note secured hereby, or Debtor shall breach any representation, covenant or undertaking made herein, or any of the Collateral shall be diminished or in danger of loss, removal or destruction, or Secured Party shall deem itself to be insecure, Secured Party, its successors and assigns, may, without notice, declare all of the indebtedness secured hereby due, and Secured Party shall have all the rights, remedies and privileges with respect to repossession, retention and sale of the Collateral and disposition of the proceeds as are accorded to a secured party upon default by the applicable sections of the UCC. In conjunction with, addition to or substitution for those rights, Secured Party, at its discretion, may enter on premises wherever any of the Collateral may be, take possession thereof and sell or otherwise dispose of the same. Secured Party may require Debtor to assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party reasonably convenient to both parties. (Debtor agrees that the office of Secured Party is a place reasonably convenient for such assembling). Debtor shall promptly pay all costs of Secured Party of collection of any and all of the liabilities and enforcement of rights hereunder, including reasonable attorneys' fees and legal expenses, and further including such fees and expenses incurred in bankruptcy and on appeal. If Collateral is perishable or threatens to decline rapidly in value or is of a type customarily sold on a recognized market, the Collateral may be sold without notice to Debtor. Otherwise, Secured Party will give Debtor reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition is to be made. The requirements of reasonable notice will be met if the notice is mailed, postage prepaid, to the address of the Debtor at least ten (10) days before the time of sale or disposition.



Exhibit D

Secured Party may comply with any applicable state or Federal law requirements in connection with a disposition of the Collateral, and compliance will not be considered adversely to affect the commercial reasonableness of any sale or other disposition of the Collateral. Secured Party may sell the Collateral without giving any warranties as to the Collateral, including any warranties of title or the like, and any such disclaimer will not be considered adversely to affect the commercial reasonableness of any sale of the Collateral.

In the event Secured Party becomes a party to any legal proceeding involving this instrument or the Collateral, Secured Party may also recover from Debtor all costs and expenses reasonably incurred by Secured Party, including reasonable attorneys' fees, such costs, expenses and attorneys' fees shall become a part of the debt secured hereby and shall be immediately payable upon demand and shall draw interest from the date of advance by Secured Party until paid at the highest rate provided in any note or other instruments secured hereby.

Except as otherwise provided in this paragraph, any term defined in the UCC and used but not defined in this agreement has the meaning when used herein given to such term in the UCC. Any term for an item or type of property for which a definition is given and that is used but not defined in this agreement shall have the meaning in any jurisdiction the UCC is or becomes applicable to this agreement. No reference to "proceeds" in this agreement authorizes any sale, transfer or other disposition of the Collateral by Debtor. All of Secured Party's rights hereunder shall inure to the benefit of its successors and assigns, and all obligations of Debtor shall be binding on Debtor's successors and assigns and upon all persons who shall become bound as a debtor to this agreement, but Debtor may not assign any of its rights or obligations under this agreement without Secured Party's prior written consent. This agreement is being executed in the State and shall be governed by and construed and enforced in accordance with the laws of the State.

THIS DOCUMENT IS EXECUTED BY DEBTOR IN FAVOR OF, AND THE TERM "SECURED PARTY" AS USED HEREIN SHALL INCLUDE, Cape Fear Farm Credit, ACA FOR ITSELF AND/OR AS AGENT/NOMINEE FOR ANY PARTY PURSUANT TO A MASTER AGREEMENT AMONG IT AND ITS WHOLLY-OWNED SUBSIDIARIES Cape Fear Farm Credit, FLCA AND Cape Fear Farm Credit, PCA, AS THEIR INTERESTS MAY APPEAR. AT THE OPTION OF SECURED PARTY, ANY DEFAULT UNDER THE TERMS AND CONDITIONS OF ANY OTHER WRITTEN INSTRUMENT EXECUTED BY DEBTOR (MEANING IN THIS CONTEXT THE OWNER OF THE COLLATERAL OR BORROWER OR BOTH) AND OWNED, HELD OR SERVICED BY SECURED PARTY IN ANY OF THE AFORESAID CAPACITIES SHALL CONSTITUTE A DEFAULT UNDER THIS DOCUMENT.

IN WITNESS WHEREOF, the undersigned have caused this Security Agreement to be executed the day and year aforesaid.

DEBTOR:

_Kenneth R Hardin_ _____ (SEAL)
Kenneth R Hardin

_Shreda G Hardin_ _____ (SEAL)
Shreda G Hardin

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

SECURED PARTY:

Cape Fear Farm Credit, ACA

Name: Shawn Hunt

Signature: _Shawn Hunt_ _____    Title: Loan Officer

G13102SA (0101)                        Page 2 of 2

**Exhibit A**

Attachment to Security Agreement Dated    March 3, 2014

By and Between Cape Fear Farm Credit, ACA and Kenneth R. Hardin and Shereda G. Hardin

$76,876.00

All of Debtor's right, title and interest in the following personal property (each capitalized term as defined in Article 9 of the North Carolina Uniform Commercial Code), wherever located (unless specifically limited herein) and whether now owned or hereafter acquired:

| Description | Number/Type |
| --- | --- |
| 2004 Case IH  SPX 3200 Sprayer | S# JFG 0005819 |
| 2002 Case IH 2366 Combine | S# JJC0255367 |
| 2003 Case IH  MX285 Tractor | S# JAZ128511 |
| 1996 Case IH 7250 Tractor | S# AJB0069065 |

All personal property of Debtor, including, but not limited to, all Goods, Accounts, Inventory, Equipment, Fixtures, Chattel Paper, Instruments, Investment Property, Letter of Credit Rights, Deposit Accounts, Commercial Tort Claims, General Intangibles, Payment Intangibles, Cash Proceeds, Certificates of Title, Documents, Farm Products, As-Extracted Collateral, securities, letters of credit, deposits, money, intellectual property rights, systems, cash, timber, timber to be cut, oil, gas and other minerals extracted or to be extracted, shrubbery, apparatus, building materials and components, leases, rents and rent proceeds, together with any appurtenances and other rights, claims or benefits arising from or pertaining to any of the foregoing.

Any and all products, proceeds and progeny of any of the foregoing (including, but not limited to, any claims to any items referred to in this definition, and any claims of Debtor against third parties for loss of, damage to or destruction of any or all of the collateral or for proceeds payable under, or unearned premiums with respect to, policies of insurance) in whatever form, including, but not limited to, cash, negotiable instruments and other instruments for the payment of money, chattel paper, security agreements and other documents and the proceeds of such proceeds.

If more than one Debtor, the foregoing collateral description applies to the interests of each such Debtor, as their interests may appear.

_Kenneth R Hardin_
Kenneth R. Hardin

_Shereda S Hard_
Shereda G. Hardin

File Number: 20140020087F
Date Filed: 3/6/2014 7:52:00 AM
Elaine F. Marshall
NC Secretary of State

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Cape Fear Farm Credit, Aca – Lumberton

B. EMAIL CONTACT AT FILER (optional)
vedwards@capefearfarmcredit.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

Cape Fear Farm Credit, Aca – Lumberton
P.O. Box 2009
Lumberton, NC 28359

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of Item 1 blank, check here ☐ and provide the Individual Debtor Information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Hardin | Kenneth | R | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1936 Russ Road | Lumberton | NC | 28358 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of Item 2 blank, check here ☐ and provide the Individual Debtor Information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Hardin | Shereda | G | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1936 Russ Road | Lumberton | NC | 28358 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Cape Fear Farm Credit, ACA | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| PO Box 2009 | Lumberton | NC | 28359 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

See Attachment

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Exhibit E

## UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

12. ADDITIONAL SPACES FOR ITEM 4 (Collateral)

All of Debtor's right, title and interest in the following personal property (each capitalized term as defined in Article 9 of the North Carolina Uniform Commercial Code), wherever located (unless specifically limited herein) and whether now owned or hereafter acquired:

| Description | Number/Type |
| --- | --- |
| 2004 Case IH  SPX 3200 Sprayer | S# JFG 0005819 |
| 2002 Case IH 2366 Combine | S# JJC0255367 |
| 2003 Case IH  MX285 Tractor | S# JAZ128511 |
| 1996 Case IH 7250 Tractor | S# AJB0069065 |

All personal property of Debtor, including, but not limited to, all Goods, Accounts, Inventory, Equipment, Fixtures, Chattel Paper, Instruments, Investment Property, Letter of Credit Rights, Deposit Accounts, Commercial Tort Claims, General Intangibles, Payment Intangibles, Cash Proceeds, Certificates of Title, Documents, Farm Products, As-Extracted Collateral, securities, letters of credit, deposits, money, intellectual property rights, systems, cash, timber, timber to be cut, oil, gas and other minerals extracted or to be extracted, shrubbery, apparatus, building materials and components, leases, rents and rent proceeds, together with any appurtenances and other rights, claims or benefits arising from or pertaining to any of the foregoing.

Any and all products, proceeds and progeny of any of the foregoing (including, but not limited to, any claims to any items referred to in this definition, and any claims of Debtor against third parties for loss of, damage to or destruction of any or all of the collateral or for proceeds payable under, or unearned premiums with respect to, policies of insurance) in whatever form, including, but not limited to, cash, negotiable instruments and other instruments for the payment of money, chattel paper, security agreements and other documents and the proceeds of such proceeds.

If more than one Debtor, the foregoing collateral description applies to the interests of each such Debtor, as their interests may appear

International Association of Commercial Administrators (IACA)

File Number: 20160037754G
Date Filed: 4/15/2016 4:13:00 PM
Elaine F. Marshall
NC Secretary of State

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Cape Fear Farm Credit, Aca - Lumberton

B. E-MAIL CONTACT AT FILER (optional)
vedwards@capefearfarmcredit.com

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Cape Fear Farm Credit, Aca - Lumberton
P.O. Box 2009
Lumberton, NC 28359

COPY

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Hardin | Kenneth | Ray | |
| 1c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 1936 Russ Road | Lumberton | NC / 28358 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| Hardin | Shereda | Locklear | |
| 2c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| 1936 Russ Road | Lumberton | NC / 28358 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Cape Fear Farm Credit, ACA | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE / POSTAL CODE | COUNTRY |
| PO Box 2009 | Lumberton | NC / 28359 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

See Attachment

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative
6a. Check only if applicable and check only one box:    6b. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility    ☐ Agricultural Lien  ☐ Non-UCC Filing
7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor
8. OPTIONAL FILER REFERENCE DATA:

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Exhibit F

## UCC FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS

**12. ADDITIONAL SPACES FOR ITEM 4 (Collateral)**

All of Debtor's now existing and all of Debtor's hereafter acquired right, title and interest in the following property and property rights (each term used herein that is defined in Article 9 of the North Carolina Uniform Commercial Code (UCC) will have the meaning given to such term in the UCC):

All of Debtor's personal property and personal property rights, whether now existing or hereafter owned, acquired or arising, or in which Debtor now has or hereafter acquires any rights (inclusive of rights to grant a security interest), wherever located and whether in Debtor's possession and control, in transit, in storage or in the possession and control of a third party for Debtor's benefit or otherwise, and including, but not limited to, any and all of Debtor's now existing or hereafter acquired goods, accounts, account receivables, contracts and contract rights, inventory, equipment, fixtures, chattel paper, instruments, investment property, letter of credit rights, deposit accounts, commercial tort claims, general intangibles, payment intangibles, cash and cash proceeds, certificates of title and bills of sale, documents, crops and other farm products, as-extracted collateral, stocks, bonds, securities and other financial assets, securities, commodities and other brokerage or financial assets accounts, letters of credit, security deposits and other deposits, money, intellectual property and intellectual property rights, computer and information technology systems and other types of systems, computer hardware and software, cash, standing timber, timber to be cut and cut-timber, oil, gas and other minerals extracted or to be extracted, shrubbery and other landscape, apparatus, building materials and components, leases and other rental agreements and associated rents, issues and profits, together with (i) any and all improvements, accessions and additions thereto and replacements or substitutions therefor, and (2) any and all present and future (i) books and records, warranties and claims on warranties, and any and all other contracts and agreements relating thereto or used in connection therewith, and (ii) proceeds, products and progeny of any and all of the foregoing property and property rights and other rights, claims or benefits arising from, pertaining to or associated with any and all of the foregoing property and property rights, including, without limitation, any and all claims against third parties for loss of, damage to or destruction of any and all of the property or property rights described herein, insurance proceeds and unearned premiums on policies of insurance, and condemnation proceeds or proceeds in-lieu of condemnation.

If more than one Debtor, the foregoing collateral description applies to the interests of each such Debtor and all such Debtors, as their respective interests may appear.

# STATE OF NORTH CAROLINA

MVR-191 (Rev.1/13)

## CERTIFICATE OF TITLE

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE | BODY STYLE |
|---|---|---|---|
| 1HD1LBJY193Y013836 | 2003 | HD | MC |
| TITLE NUMBER | | TITLE ISSUE DATE | PREVIOUS TITLE NUMBER |
| 7785981611B3909 | | 04/29/2016 | 7/98360234411018 |

CAPE FEAR FARM CREDIT, ACA
PO BOX 2009
LUMBERTON   NC   28359-2009

ODOMETER READING

ODOMETER STATUS

TITLE BRANDS

OWNER(S) NAME AND ADDRESS

KENNETH RAY HARDIN
1936 RUSS RD
LUMBERTON NC  28358-8823

The Commissioner of Motor Vehicles of the State of North Carolina hereby certifies that an application for a certificate of title for the herein described vehicle has been filed pursuant to the General Statutes of North Carolina and based on that application, the Division of Motor Vehicles is satisfied that the applicant is the lawful owner. Official records of the Division of Motor Vehicles reflect vehicle is subject to the liens, if any, herein enumerated at the date of issuance of this certificate.

As WITNESS, his hand and seal of the Division of the day and year appearing in this certificate as the title issue date.

*Kelly J. Thomas*

COMMISSIONER OF MOTOR VEHICLES

| FIRST LIENHOLDER: 886713 | DATE OF LIEN 04/15/2016 | LIEN RELEASED BY: |
|---|---|---|
| CAPE FEAR FARM CREDIT, ACA | | SIGNATURE |
| PO BOX 2009 | | |
| LUMBERTON  NC  28359-2009 | | TITLE _____ DATE _____ |

| SECOND LIENHOLDER: | DATE OF LIEN | LIEN RELEASED BY: |
|---|---|---|
| | | SIGNATURE |
| | | TITLE _____ DATE _____ |

| THIRD LIENHOLDER: | DATE OF LIEN | LIEN RELEASED BY: |
|---|---|---|
| | | SIGNATURE |
| | | TITLE _____ DATE _____ |

| FOURTH LIENHOLDER: | DATE OF LIEN | LIEN RELEASED BY: |
|---|---|---|
| | | SIGNATURE |
| | | TITLE _____ DATE _____ |

ADDITIONAL LIENS:

97138993

909  T1MOB1T

## ANY ALTERATIONS OR ERASURES VOID TITLE

Exhibit G